ROBERT ALLEN KOOYENGA, Plaintiff, v. HERTZ EQUIPMENT RENTALS, INC., et al., Defendants.—(THOMAS LEAHY et al., Defendants and Third-Party Plaintiffs-Appellees, v. CHARLES J. FEBEL, INC., Third-Party Defendant-Appellant—(BITUMINOUS CASUALTY CORPORATION, Garnishee-Appellant).)

First District (2nd Division) Nos. 78-1239, 78-1740, 79-414 cons.

Opinion filed December 26, 1979.

Phelan, Pope & John, of Chicago (Richard J. Phelan and William T. Cahill, of counsel), for appellant Bituminous Casualty Corporation.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, Fredric J. Grossman, and Robert H. Mittelman, of counsel), for appellee Thomas Leahy.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This appeal involves three consolidated cases arising out of a suit brought in the circuit court of Cook County under the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60 through 69) by Robert Allen Kooyenga (Kooyenga) against Thomas Leahy and Leahy Home Building Co., Inc. (Leahy), to recover damages for injuries Kooyenga sustained when he fell from a scaffold. Leahy was the general contractor and owner of the premises where Kooyenga fell. Leahy filed a third-party complaint against Charles J. Febel, Inc. (Febel), the subcontractor and Kooyenga's employer, on the theory of active-passive negligence. Both actions were jointly tried before a jury. The jury returned a verdict in favor of Kooyenga against Leahy in the sum of $1,578,000 and a verdict in favor of Leahy against Febel entitling Leahy to reimbursement from Febel.

The record contains a copy of a page as it appears in the law record book, the book in which the clerk's office transcribes the pronouncements of judgments and on which the clerk's office relies in making up the record on appeal.[1] This document as it appears in the record bears the date of January 3, 1977, and recites both verdicts rendered by the jury and the judgment

---

[1] See *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74, for a more detailed discussion of procedures used in the circuit court of Cook County in entering judgments in the trial court and then transferring them to the permanent and official records in the clerk's office.

rendered by the court in favor of Kooyenga against Leahy in the sum of $1,578,000, together with costs and charges expended in his behalf and execution therefor. No judgment corresponding to the jury verdict rendered against Febel in favor of Leahy is recorded on this document.

On January 28, 1977, Febel filed a post-trial motion for judgment notwithstanding the verdict, or in the alternative for a new trial or a remittitur of damages, alleging that the jury verdicts rendered against both Leahy and Febel were incorrect and that substantial errors prejudicial to Febel were committed during the trial. Three days later Febel filed a supplemental post-trial motion asking for discovery as to whether there was any agreement prior to verdict and judgment whereby Kooyenga, Leahy, and Leahy's insurer or their attorneys agreed not to satisfy the judgment against Leahy or take execution thereon or garnish the insurance proceeds.

On May 12, 1977, the trial court denied all post-trial motions. This order was initialed by the attorneys involved in the case, including the attorney representing Febel. On this same date, the trial court set appeal bonds for both Leahy and Febel at $2,000,000 each. This order was initialed by Kooyenga's attorney and Febel's attorney.

Thereafter, Kooyenga, Leahy, and Febel filed suit against Bituminous Casualty Corporation (Bituminous), Febel's insurer, seeking recovery of $1,100,000, the face amount of two casualty insurance policies issued by Bituminous to Febel. Febel also sought recovery of the amount of the judgment in excess of its insurance proceeds alleging that Bituminous' refusal to settle the case was made in bad faith. Bituminous filed a motion to dismiss alleging that no judgment had been rendered on the verdict in favor of Leahy against Febel.

On April 25, 1978, Leahy filed a motion requesting the court to enter judgment *nunc pro tunc* as of December 30, 1976, on the jury verdict in favor of Leahy against Febel in the amount of $1,578,000. In this motion, Leahy alleged that the clerk of the court inadvertently failed to enter the judgment on the verdict in favor of Leahy against Febel; that all of the parties understood that judgment had been entered on that verdict and acted accordingly; and that by letter dated June 8, 1977, Febel was informed by his insurer, Bituminous, that time for filing a notice of appeal would expire on June 11, 1977, thereby acknowledging that a final judgment had been entered and became appealable on May 12, 1977, the date all post-trial motions were denied.

At the hearing held on this motion, Febel argued that judgment upon the verdict in favor of Leahy against Febel could not be entered until Leahy had made some payment to Kooyenga in satisfaction of the judgment entered against it because without such payment by Leahy, there was no basis for reimbursement and Febel's obligation to indemnify Leahy existed only as a contingent debt.

Finding that the clerk inadvertently failed to enter judgment on the verdict returned in favor of Leahy against Febel, the trial court, on April 25, 1978, granted Leahy's motion and entered judgment on the verdict *nunc pro tunc* as of January 3, 1977, in the amount of $1,578,000 in favor of Leahy against Febel. On May 23, 1978, Febel filed a notice of appeal from this judgment. That appeal is case No. 78-1239.

Subsequent to the filing of Febel's appeal, Kooyenga served a writ of execution on Leahy for collection of his judgment which was returned unsatisfied. Leahy then served a writ of execution on Febel. Febel filed a motion to quash Leahy's writ alleging that Leahy could not execute on Febel's assets until Leahy satisfied Kooyenga's judgment. On August 15, 1978, the trial court denied Febel's motion to quash from which Febel filed a second appeal, case No. 78-1740.

On August 21, 1978, while Febel's consolidated appeals were pending before this court, Leahy instituted nonwage garnishment proceedings against Bituminous seeking to recover the combined limits of the two casualty insurance policies issued by Bituminous to Febel. In its answer to the garnishment interrogatories, Bituminous stated that it had issued two policies insuring Febel in the amount of $1,100,000, but that its obligation to pay on the policies was contingent on the final determination to be made on Febel's appeal from the judgment entered against Febel in favor of Leahy. On December 19, 1978, the trial court granted Leahy's motion to strike Bituminous' amended answers to the garnishment interrogatories and entered judgment in favor of Leahy against Bituminous in the sum of $1,100,000. In case No. 79-414, Bituminous appeals from this judgment.

## I.
We first consider the appeal in case No. 78-1239 as we deem its resolution to be determinative of the position we must take in regard to the issues raised in the other two consolidated appeals.

## A.
In case No. 78-1239, Febel challenges (i) the propriety of the entry of a judgment *nunc pro tunc*, and (ii) the propriety of the entry of a final money judgment against Febel, an indemnitor, in favor of Leahy, an indemnitee, before Leahy had satisfied in whole or in part the judgment rendered against it in favor of Kooyenga, the plaintiff. We consider the former question first.
■■ ■ A *nunc pro tunc* order is an entry now for something previously done, made to make the record speak now for what was actually done then. (*In re Estate of Bird* (1951), 410 Ill. 390, 398, 102 N.E.2d 329; *Furth v. Furth* (1972), 5 Ill. App. 3d 73, 76, 283 N.E.2d 102.) A court has inherent power to make an entry *nunc pro tunc* at any time, even after the expiration of its term, to correct a clerical error or matter of form so that the record reflects

the actual order or judgment rendered by the court when such entry is based upon a definite and certain record. (*In re Estate of Young* (1953), 414 Ill. 525, 534, 112 N.E.2d 113; *Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 809-10, 263 N.E.2d 708.) This power rests partly upon the right and duty of the courts to do entire justice to every suitor, and partly upon their control over their own records and their authority to make them speak the truth. *Knefel v. People* (1900), 187 Ill. 212, 215, 58 N.E. 388.

■■ ■ The entry of a judgment *nunc pro tunc* is always proper when a judgment has been ordered by the court, but the clerk has failed or neglected to copy it into the record. (*Metzger v. Morley* (1902), 197 Ill. 208, 210, 64 N.E. 280; *Howell v. Morlan* (1875), 78 Ill. 162, 164-65.) However, before such a *nunc pro tunc* entry may be made, it is necessary that there be evidence that a judgment was actually rendered. Such evidence may be founded upon some note or memorandum from the records or quasi records of the court (*Spears v. Spears* (1977), 52 Ill. App. 3d 695, 698, 367 N.E.2d 1004) or upon anything in the record before the court from which certainty is assured without reliance on the judge's memory alone (*Barnett v. Werner* (1957), 13 Ill. App. 2d 494, 498, 142 N.E.2d 830). A *nunc pro tunc* entry may not be used to supply omitted judicial action, correct judicial errors under the pretense of correcting clerical errors, or cure a jurisdictional defect. *Spears v. Spears.*

It is Febel's contention that there is no evidence in the record disclosing that the trial court in fact directed entry of judgment on the verdict returned in favor of Leahy against Febel, and thus the failure to enter the judgment was a judicial omission and not simply a clerical error. To resolve such an issue, it is necessary to examine the record and determine whether it indicates with sufficient clarity whether at the conclusion of the trial a judgment on the verdict in favor of Leahy against Febel was rendered and if so, what that judgment was.

We initially note that the prayer for relief in Leahy's third-party complaint against Febel prayed that in the event judgment was entered against it in favor of Kooyenga in a certain amount that Leahy "immediately" have judgment against Febel in like amount and that Febel be required to pay Kooyenga the full amount of the judgment. Upon the conclusion of the trial, two jury verdicts were returned. These verdicts were read in open court and the jury polled. That judgment was entered on one of the verdicts indicates that the court acted by giving its clerk some direction. There is no plausible explanation as to why judgment would not have been rendered on the other verdict. This is not a situation where the judge expressly reserved ruling on the verdict or left open the question of what money amount should be entered on the verdict. Such a question was never raised by Febel until over a year later in opposition to the motion for judgment *nunc pro tunc*. Our research and that of counsel has disclosed no Illinois case which has squarely faced the issue raised by Febel to the effect that under the law of implied

indemnity, an indemnitor is not obligated to pay an indemnitee until the indemnitee has first satisfied a judgment rendered against it in favor of the plaintiff. This issue's novelty coupled with the fact that it was not raised by Febel supports our conclusion that it was not considered by the trial judge at the time judgments were rendered on the verdicts.

Subsequent to the time the verdicts were returned and judgment entered on at least one of those verdicts, the parties acted as if judgment had been rendered on both verdicts. Within 30 days of the January 3, 1977, date, Febel filed a post-trial motion contesting the verdicts rendered against both itself and Leahy and also a supplemental post-trial motion which sought relief "supplemental to verdict and judgment * * *." The trial court's order denying all post-trial motions was initialed by several of the attorneys including Febel's attorney. The trial court set an appeal bond in the amount of $2,000,000 for Febel which order was initialed by Febel's attorney. The need for an appeal bond or its approval would not have been necessary had Febel's attorney believed judgment had in fact not been entered against it in the same amount it had been rendered against Leahy.

Febel's insurer, Bituminous, sent a letter dated June 8, 1977, to Robert J. Hourigan, Febel's personal attorney, stating in part:

> "[I]t is our understanding that you, as attorney for Charles Febel personally and for his company, Charles J. Febel, Inc., have agreed with our decision that no appeal should be taken from judgment entered in such case. While our client has a right under the policy to file an appeal, it is further our understanding that you have no interest in pursuing such an action. As you know, the time for filing a Notice of Appeal in this case expires on Saturday, June 11, 1977."

Febel argues that the word "judgment" as it appears in the letter referred to the judgment entered in favor of Kooyenga against Leahy from which Febel had a right to appeal. This argument loses any merit it might have had when viewed together with another letter included in the record written by Febel's trial attorney to Kooyenga's attorney dated May 10, 1977, and stating in part that Kooyenga's settlement offer of March 3, 1977, had been rejected because Febel did not have enough insurance to discharge the "judgment," and it did not want to be in the position of having an unsatisfied "judgment" against it in favor of Leahy after the entire limits of Febel's policy had been exhausted. We think the record is crystal clear that Febel thought and acted as if judgment was entered against him on January 3, 1977. Using the clerk's failure to record the judgment is an obvious attempt to delay and defer Febel's obligation. Of course, the ability to use the money during this period of time serves not only to frustrate the judicial process but is to the economic benefit of Febel's insurer, Bituminous.

At the hearing on the motion to enter judgment *nunc pro tunc* the trial judge stated:

"The facts I have are of asking the jury whether they reached a verdict or not; the foreman handed it to the clerk to see that it was in proper form signed by all the jurors. Then I have the fact that the court said judgment will be entered on the verdict."

Febel cites this as evidence that the trial judge could recall only directing the entry of one judgment, the judgment in favor of Kooyenga against Leahy. We cannot accept this contention in view of the fact that the only verdict being discussed at that hearing was the one rendered in favor of Leahy against Febel and that the trial judge also stated:

"Well the only reason we have a problem here is because the clerk just forgot to tell them down on the 11th floor that there were two findings instead of one and certainly that is just a clerical mistake that can be corrected at this time."

██ The verdict returned in favor of Kooyenga against Leahy included a dollar amount whereas the verdict returned in favor of Leahy against Febel did not. It stated only that Leahy was entitled to reimbursement from Febel. However, the jury had no discretion in fixing the amount of indemnity to be awarded to Leahy since, under the theory of implied indemnity, Leahy, found to be the passive wrongdoer, was entitled to be completely relieved from liability by Febel, found to be the active wrongdoer. Because of this, a money judgment rendered against an indemnitee has been customarily rendered against the indemnitor in the same amount. (*Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112; *Sack v. Arcole Midwest Corp.* (1961), 33 Ill. App. 2d 344, 179 N.E.2d 441.) That the trial judge intended such a judgment to be entered is supported by the fact that until this appeal, this practice had never been questioned as far as we can determine from Illinois decisions, and that this issue was not raised before, at, or soon after a judgment had been rendered.

 The distinction between a clerical error and a judicial one does not depend so much upon the source of the error as upon whether it was the deliberate result of judicial reasoning and determination (*Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 810, 263 N.E.2d 708), as opposed to an inadvertence in the ministerial matter of putting in form the judgment of the court (*Ives v. Hulce* (1885), 17 Ill. App. 30, 34). It cannot be said that the error here was the result of deliberate judicial reasoning and determination. Keeping in mind the primary purpose of a *nunc pro tunc* entry, that being to make the record speak the truth, and that a judgment must be based on a definite and certain record, such requirement being intended to preserve the integrity of judgments, we find, based upon the foregoing facts considered in their entirety, that the trial court properly entered the judgment *nunc pro tunc*. We think no other construction or interpretation is possible based upon the record before us.

## B.

A *nunc pro tunc* order, entered to show what was done earlier, takes effect from such prior date. (*Scott v. Skokie Valley Community Hospital* (1977), 54 Ill. App. 3d 766, 767, 370 N.E.2d 107; *Grissom v. Buckley-Loda Community Unit School Dist. No. 8* (1973), 11 Ill. App. 3d 55, 58, 296 N.E.2d 624.) The question arises here as to whether the prior date of the *nunc pro tunc* judgment must be treated as "effective" in regard to Febel's right to appeal.

■■ It has been said that a judgment is not effective as of the date to which it expressly relates back if such effectiveness would deny to any proper party the right to review by a higher court (49 C.J.S. *Judgments* § 121, at 256 (1947); 1 A. C. Freeman, Law of Judgments § 139, at 264 (5th ed. 1925)), the test being whether the party could have obtained the desired review before the *nunc pro tunc* order was made (Freeman, Law of Judgments).

Every final judgment of a circuit court in a civil case is appealable as of right. (Ill. Const. 1970, art. VI, §6; Ill. Rev. Stat. 1977, ch. 110A, par. 301.) When the trial judge, as in the present case, does not require the submission of a written judgment order, a judgment becomes final only when entered of record. (Ill. Rev. Stat. 1977, ch. 110A, par. 272.)[2] An appeal is perfected by the filing of a notice of appeal within 30 days after the entry of a final judgment or within 30 days of an order disposing of a timely post-trial motion directed against the judgment. (Ill. Rev. Stat. 1977, ch. 110A, par. 303(a).) This court would have no jurisdiction to review the judgment we have found to have been rendered on January 3, 1977, until it was actually entered of record which was in April of 1978. To apply the fiction that the *nunc pro tunc* judgment takes effect as of the January 3, 1977, date would, at first glance, seem to foreclose all rights Febel had to appeal the judgment on its merits. However, the record in this case indicates that Febel believed judgment had been entered against it on January 3, 1977, filed post-trial motions in which the issue Febel now raises against the judgment on its merits was not mentioned, and upon the denial of these motions decided not to appeal. Had Febel perfected an appeal at that time it would have discovered the omission of the entry of judgment when preparing the record for appeal and could have called the trial court's attention to it.

■■ While this court will exercise all proper means to preserve a party's valuable right to appeal, to do so here would be to allow Febel to take advantage of a clerical error as a means for perfecting an appeal from a judgment it had previously made a conscious determination not to appeal. Such would violate the spirit of Rule 303(a) which contemplates the prompt

---

[2] It is difficult to understand in a case involving judgments in excess of $1,000,000, why the trial court and all counsel did not use a form of written judgment. If used, these appeals would not have proceeded.

and orderly prosecution of an appeal. Under these circumstances, Febel waived its right to appeal and should not be allowed a "second chance" to appeal. The appeal in case No. 78-1239 is affirmed.

## II.

■■ Case No. 78-1740 is an appeal from the trial court's denial of Febel's motion to quash Leahy's writ of execution against Febel for collection of Leahy's judgment. Supplementary proceedings to collect, of whatever nature, must derive their support from the main judgment. (*People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 503, 387 N.E.2d 856.) Having found that the trial court's entry of the *nunc pro tunc* judgment was proper and that Febel waived its right to appeal that judgment on its merits, we must affirm the trial court's denial of Febel's motion to quash Leahy's writ of execution on that judgment. The appeal in case No. 78-1740 is affirmed.

## III.

■■ In case No. 79-414, Bituminous appeals from the trial court's entry of a garnishment judgment in favor of Leahy against Bituminous in the sum of $1,100,000, the combined limits of two casualty insurance policies issued by Bituminous to Febel. Bituminous argues that the insurance policies are subject to the express condition stated in the policies that Bituminous is under no obligation to pay until the obligation of its insured, Febel, has become final and certain and relies primarily on *Ancateau v. Commercial Casualty Insurance Co.* (1943), 318 Ill. App. 553, 48 N.E.2d 440.

In *Ancateau*, the court held that a garnishment action against an insurance company was premature during the pendency of an appeal filed by the judgment debtor on the underlying judgment even though no supersedeas bond had been filed. However, this court has subsequently rejected the holding in *Ancateau* and has held that a garnishment action against an insurer by a judgment creditor is proper even though an appeal of the underlying judgment is pending where an appeal bond has not been made and a supersedeas has not been obtained. *Long v. Duggan-Karasik Construction Co.* (1974), 25 Ill. App. 3d 236, 323 N.E.2d 56; *Colon v. Marzec* (1969), 116 Ill. App. 2d 278, 253 N.E.2d 544; *Cuttone v. Peters* (1966), 67 Ill. App. 2d 1, 214 N.E.2d 499.

In *Cuttone*, this court stated:

> "After careful consideration, we feel that in this matter the interests of a plaintiff in a speedy and sure remedy must come before the interests of the insurance company. Should the underlying judgment be set aside the insurance company surely has a right of action against a plaintiff for recovery of any money it has paid." 67 Ill. App. 2d 1, 6.

Bituminous seeks to distinguish these cases on the basis that unlike the

situation here, the insurers involved there had not raised a contract defense. We note that Bituminous has not included the insurance policies upon which it bases its defense in the record on appeal. Regardless, this court in its *Long, Colon,* and *Cuttone* decisions cited as authority for the rejection of *Ancateau,* cases wherein such a contractual defense had been raised. See *Travelers Insurance Co. v. Pinkerton-Hays Lumber Co.* (Fla. App. 1960), 120 So. 2d 448; *Ohio Casualty Insurance Co. v. Gantt* (1951), 256 Ala. 262, 54 So. 2d 595; *Nikkari v. Jackson* (1948), 226 Minn. 393, 33 N.W.2d 36; *Conley v. Singleton* (Fla. App. 1965), 171 So. 2d 65; *Williams v. Moran* (Miss. 1970), 233 So. 2d 110.

Leahy's *nunc pro tunc* judgment against Febel, Bituminous' insured, which was a judgment for money in a sum certain, was a final judgment. With it Leahy acquired the right to be paid that sum of money and enforce the judgment by means of a garnishment proceeding unless it was stayed in some manner. (*Colon v. Marzec,* at 280-81.) Bituminous did not obtain a stay of the money judgment in one of the ways provided for in Supreme Court Rule 305 (Ill. Rev. Stat. 1977, ch. 110A, par. 305). Therefore, we must affirm the trial court's judgment.

In view of the foregoing, we affirm the judgments entered by the circuit court of Cook County in case Nos. 78-1239, 78-1740, and 79-414.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.