JOAN HARNER, a/k/a Joan Kirchberg, Plaintiff-Appellant, *v.* WILLIAM H. HARNER, Defendant-Appellee.

First District (2nd Division)    No. 81-2514

Opinion filed March 30, 1982.

Charles R. Kirchberg, of Park Ridge, for appellant.

No brief filed for appellee.

JUSTICE DOWNING delivered the opinion of the court:

This appeal arises from post-divorce decree proceedings instituted by former spouses Joan Harner (Joan) and William Harner (William), whose marriage was dissolved by order of the circuit court of Cook County on July 22, 1974. William has failed to file an appearance in this court or an appellee's brief. Nevertheless, the merits of the appeal will be considered under the rule of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131, 345 N.E.2d 493.

Joan claims the circuit court erred (1) in using earlier child-support overpayments made by William to cancel his obligation for amounts due to Joan for their children's extraordinary medical expenses; (2) in its determination concerning requested modification of child support for their

two youngest children (Mark and Laura); (3) in refusing to enter its child support modification order *nunc pro tunc* to the date of the filing of Joan's petition; and (4) in failing to conduct an impartial hearing.

Under the judgment of divorce entered July 22, 1974, the circuit court ordered William to pay Joan $900 per month unallocated child support for the parties' four minor children. This amount was to be abated by a fixed percentage as each child reached majority. William was also to pay extraordinary medical care costs required for the children. Joan was to claim the child support as income on her Federal tax returns.

On December 8, 1980, William filed a petition with the circuit court requesting that Joan be ordered to comply with the tax provisions of the divorce judgment. Joan counterpetitioned, requesting among other things that William be ordered to reimburse her for medical expenditures she had made for the children and for an increase in child support for the parties' "three" minor children. (In fact, their older son (Joseph) was 19 when the counterpetition was filed; their second son (Mark) became 18 in the month following the court order appealed here; the youngest child (Laura) was 15 when the counterpetition was filed.) Joan requested that the monthly level of child support be increased from $710 to $1,850. William later petitioned the court for an order that Joan reimburse him for $3,360 of child support he had overpaid her on behalf of Joseph after that child had reached his majority.

At the hearing, William related that his salary at the time of the divorce in 1974 was $34,000 per year, and that his gross income was about $42,000. In 1980, William had a salary of $43,000 and a gross income of $78,300. He worked as a salesman throughout the period. Much of his nonsalary income came from bonuses he received. He drove a company car, and the company paid much of his business expenses. William bought a home in 1979 for $105,000, with a $30,000 mortgage.

The parties' oldest child (Terry), a daughter, had lived with William for nearly six years. She was 24 at the time of the hearing. William had ceased paying child support for her at the time she moved in with him. He continued to pay the remaining amount of support due, $710 per month, even after Joseph reached 18 on September 19, 1979. Before reducing the child support for this son as he was entitled under the decree, William had made an overpayment of $3,360. He demanded a refund from Joan, but she refused. William stated he had been unaware of his right to reduce child support for Joseph upon the latter reaching his majority. He had reduced support payments from $900 to $710 per month only because his daughter Terry was living with him, and not due to her age.

Joan testified in detail as to expenses for the youngest child, Laura, including Laura's share of the family housing and utility costs. The total

amount was $505 per month. Joan testified that the monthly expenses for Mark were $560. Joan admitted these figures were largely guesses on her part.

At the time of the hearing, Joan had remarried. She was not working. She owned the home in which the family lived. It was worth $100,000 and was subject to an $8,000 mortgage.

Joan had spent approximately $2,150 of her own money for medical expenses which William was obligated to pay under the terms of the divorce decree. Up to the time of the hearing, he had provided only $350 of that amount.

The circuit court ruled that the amount of the overpayment of child support made by William ($3,660) should cancel out the amount of medical costs he owed Joan (approximately $1,800). The court refused to increase child support for Mark. It did order William to continue to make support payments for Mark in the amount required under the divorce decree until he graduated from high school (anticipated in June 1982), even though he would be 18 years old during that time. Finally, the court increased the child support for Laura from $315 to $400 per month.

## I

Joan contends that the circuit court erred in allowing William to offset the amount he owed to Joan for the children's medical expenses with the amount of child support he had overpaid.

■■ The question of whether a parent may use overpayments of child support to offset other amounts actually due and owing has apparently not been answered in Illinois. The general rule is that payments made for the benefit of children which are voluntary and not pursuant to a divorce decree may not be credited against other amounts due under the decree. (*Whitman v. Whitman* (1980), ___ Ind. App. ___, 405 N.E.2d 608; *Webb v. Webb* (Mo. App. 1971), 475 S.W.2d 134; *Horne v. Horne* (1968), 22 N.Y.2d 219, 292 N.Y.S.2d 411, 239 N.E.2d 348.) This is true even where, as here, the payments are made under the mistaken belief that they are legally required. (*Crowder v. Crowder* (La. App. 1974), 296 So.2d 842; see Annot., 47 A.L.R.3d 1031, 1058-61 (1973).) The policy underlying this rule is to prevent the supporting parent from, in effect, unilaterally modifying the support decree and thereby affecting the expectations of the custodial parent as to support payments. We find merit to this rule and therefore adopt it.

■■ Here, the circuit court offset William's indisputable debt of nearly $1,800 to Joan with the $3,660 he had overpaid her for child support of the older son. This ruling violated the general rule noted above. There being no evident reason in this case to disregard the general rule, we find the

circuit court's order to be erroneous and reverse it. William must reimburse Joan for the nearly $1,800 amount due her for the children's medical costs. He is not to be reimbursed for any of the overpayment.

## II

Joan argues the circuit court erred in confirming the amount of child support payable on behalf of the younger son (Mark) and in raising the youngest child's (Laura) support only from $315 to $400 per month.

Under section 510 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1979, ch. 40, par. 510), an award of child support may be modified only upon a showing of a substantial change in circumstances. The evidence must establish that both the needs of the child and the supporting parent's ability to pay have increased. (*Scott v. Scott* (1979), 72 Ill. App. 3d 117, 124, 389 N.E.2d 1271.) The circuit court's decision on this issue is one which rests in its sound discretion. It will not be reversed absent a showing of an abuse of that discretion. *In re Marriage of Schmerold* (1980), 88 Ill. App. 3d 348, 350, 410 N.E.2d 629.

Joan cites *Addington v. Addington* (1977), 48 Ill. App. 3d 859, 863, 363 N.E.2d 151, in support of her argument. Therein, the Fifth Division of this court stated that a proper basis for showing the requisite increased need of a child is evidence that, since entry of the original support order, the child has grown older and the cost of living has risen. The court went on to state that, if the evidence also shows an increase in the supporting parent's ability to pay, an increase in child support would be warranted. (48 Ill. App. 3d 859, 863.) The *Addington* rule has been relied upon in several cases, including the *Schmerold* and *Scott* cases cited above. These latter cases were respectively cited in *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 682, 426 N.E.2d 246, and *In re Marriage of Helfrich* (1981), 101 Ill. App. 3d 1070, 1072, 428 N.E.2d 1149.

■■ We believe the *Addington* rule should not be mechanically applied by the courts when making support-increase determinations. Simple logic dictates that the first element of the test, the child having grown older, will always be met. Further, given the economic climate of this country over the last two decades, it is obvious the second element, an increase in the cost of living, can generally be shown. As a result, the test is reduced to the question of whether the supporting parent's ability to pay has increased. We posit that application of the *Addington* rule in such circumstances fails to comply with the requirements of section 510 of the Act. Rote application of that rule simply fails to determine that the required showing of a *substantial* change in circumstances has been made.

Instead, we believe the proper test can be found in the cases cited by the *Addington* court in formulating the rule, *Smith v. Smith* (1971), 132 Ill.

App. 2d 722, 270 N.E.2d 206, and *Kelleher v. Kelleher* (1966), 67 Ill. App. 2d 410, 214 N.E.2d 139. In *Smith*, the court noted that the cost of living had increased but focused upon the fact that two of the parties' three children had begun school since entry of the initial support order, resulting in new expenses. The court also found the husband's income had increased significantly without the addition of extra expenses to him. In *Kelleher* as well, the court noted the parties' three children had begun school since entry of the original support order, entailing new costs. Further, after entry of the original order, one of the children was diagnosed as mentally retarded, which involved expenses unanticipated at the time of the first decree. The court also noted the husband's income had more than doubled, allowing him to expend sums for what it considered "luxury" activities. In sum, these cases contained specific evidence of significant unforeseen or otherwise additional increases in the custodial parent's cost of living which constituted the requisite substantial change in circumstances.

■■ Applying such reasoning to the present case, it is clear the circuit court correctly denied an increase in support for the second son, Mark. The record is devoid of evidence of Joan's expenses for Mark at the time of the original decree in 1974. Also, in contrast to the evidence she presented about her youngest child, Laura, Joan did not even attempt to itemize the individual factors underlying her determination of the amount she spent per month on Mark. By her own admission, the figure was a guess. The circuit court committed no error in modifying the earlier decree solely to the extent of requiring William to pay support only until Mark's graduation from high school, expected eight months after his 18th birthday.

■■ As for Laura, the court's order increasing support by $85 per month was not an abuse of discretion. As Joan's brief notes, "the record is devoid of any evidence of the lifestyle of the child." Joan's testimony concerning the 1980 expenses for this daughter admittedly involved only guesses. In making her argument that the support payments should be greater, Joan relies upon "guidelines" established by the Domestic Relations Division of the Circuit Court of Cook County, which set support amounts as a percentage of income. Joan asserts the circuit court ignored these guidelines here. We find this argument without merit. This court has previously noted that an order setting child support solely on the basis of such arbitrary percentage rates does not comply with the requirements of section 505 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 505). (See *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1114, 421 N.E.2d 1308.) No support order will be reversed simply for failing to adhere to these guidelines. Here, the circuit court committed no error in modifying the support order to the extent which it did.

## III

Joan contends the circuit court abused its discretion in failing to enter the order increasing child support *nunc pro tunc* to the date of the filing of the modification petition.

A *nunc pro tunc* order is an entry made now to make the record speak for something done previously. (*Kooyenga v. Hertz Equipment Rentals, Inc.* (1979), 79 Ill. App. 3d 1051, 1055, 399 N.E.2d 216, *appeal denied* (1980), 81 Ill. 2d 584.) One of the uses of such an order is to correct a record which lacks an order actually made earlier but omitted therefrom for some reason. If there was no earlier order to which a *nunc pro tunc* order can relate back, use of such an order is improper. *Furth v. Furth* (1972), 5 Ill. App. 3d 73, 76, 283 N.E.2d 102.

■■ Here, a *nunc pro tunc* order would be inappropriate since no earlier order modifying the initial support decree was made but omitted from the record. However, the circuit court could have retroactively modified the support obligation to the date of filing of the modification petition. (See *In re Marriage of Junge* (1979), 73 Ill. App. 3d 767, 771, 392 N.E.2d 313; *Dixon v. Dixon* (1977), 45 Ill. App. 3d 934, 938, 360 N.E.2d 486.) The record does not indicate the circuit court considered this option. We find no basis in the record why the modification order should not have been made retroactive. We therefore modify the judgment to provide for such retroactive modification to December 1980.

## IV

Joan asserts she did not receive a fair hearing, and the case should be remanded for rehearing for that reason.

We have reviewed the record of proceedings in this case. In our opinion, neither Joan nor her children were prejudiced by the manner in which the hearing proceeded below. Consequently, we decline to accept her argument.

For the foregoing reasons, we affirm that portion of the circuit court's decision concerning child support for Mark; we modify the circuit court's decision concerning child support for Laura by making the increase thereof retroactive to the filing of Joan's petition; and we reverse that part of the circuit court's order allowing William to offset amounts he owed to Joan with support overpayments he had made.

Affirmed in part; reversed in part; modified in part.

STAMOS, P. J., and PERLIN, J., concur.