510 So.2d 1033 (1987)
Sarah H. WOOTEN, N/K/a Sarah Winslow, Appellant,
v.
Robin N. WOOTEN, Jr., Appellee.
No. 86-2880.
District Court of Appeal of Florida, Second District.
July 24, 1987.
*1034 Christy F. Harris of Harris, Midyette & Clements, P.A., Lakeland, for appellant.
Charles L. Carlton and Harold E. Barker of Carlton & Carlton, P.A., Lakeland, for appellee.
LEHAN, Judge.
An ex-wife appeals from the trial court's order which provided that the ex-husband should receive credit against future child support obligations in order that he could recoup past child support overpayments. She contends that the trial court erred in finding that overpayments were made and in ordering such recoupment even if there were overpayments. We affirm as to the finding of overpayments but remand for further proceedings as to whether recoupment is in order.
We conclude that the trial court correctly construed the parties' amended settlement agreement to have removed the husband's obligation in the original settlement agreement to increase child support payments in the event of the wife's remarriage at which time alimony would terminate. We agree with the trial court that the matter of increased child support was governed by a provision in the amended agreement specifically providing that the amount of child support fixed in the original agreement would not increase unless there is a change of circumstances not previously considered by the parties. The wife's remarriage was not such a change of circumstances because it was a circumstance specifically considered in the original agreement. That provision was in a section of the amended agreement which specifically said that that section amended paragraph 2 of the original agreement. Paragraph 2 of the original agreement provided for child support. Other, general language in the amended agreement might by itself be construed to the contrary, but that other language did not specifically address the subject of child support and an increase in child support as did the foregoing provision found by the trial court to govern. See Cypress Gardens Citrus Products, Inc. v. Bowen Bros., Inc., 223 So.2d 776 (Fla. 2d DCA 1969); Flowers v. Miskoff, 233 So.2d 201 (Fla. 4th DCA 1970).
We do not conclude that the husband's actions in paying increased child support for a period of time, pursuant to a letter from the wife's attorney, following the wife's remarriage should cause a different result. The actions of the parties to a contract may govern the construction of an ambiguous contract, see Flagship National Bank v. Gray Distribution Systems, Inc., 485 So.2d 1336 (Fla. 3d DCA 1986), rev. denied, 497 So.2d 1217 (Fla. 1986), but *1035 the trial court did not consider the amended agreement to be ambiguous in the foregoing regard, nor do we. Nor do we conclude that the trial court erred in not finding that the husband was precluded by laches from seeking recoupment. See Bethea v. Langford, 45 So.2d 496 (Fla. 1949).
However, we remand for further proceedings as to whether recoupment should be ordered under all the circumstances. Recoupment for child support overpayments may be proper in given equitable circumstances. See section 61.13(1)(a), Florida Statutes (1985); Tash v. Oesterle, 380 So.2d 1316 (Fla. 3d DCA 1980); Jimenez v. Jimenez, 309 So.2d 38 (Fla. 3d DCA 1975). But the record does not reveal the relevant circumstances here. There was no testimony or other evidence on the basis of which a determination could be made as to whether such recoupment would or would not be equitable.
The judgment is affirmed as to there having been overpayments, but the case is remanded for further proceedings as to whether recoupment is in order.
Affirmed.
HALL, J., concurs.
CAMPBELL, A.C.J., concurs in part and dissents in part.
CAMPBELL, Acting Chief Judge, concurring in part and dissenting in part.
I concur in part, but also must respectfully dissent in part. I concur in affirming the trial court's finding that the amended settlement agreement, approved by the court, was clear and unambiguous as it pertained to the modification of the child support obligations of the husband. The parties' original settlement agreement, incorporated into the final judgment of dissolution entered July 24, 1978, provided that the husband would pay to the wife the sum of $750 per month as child support. The agreement further provided that if the wife should remarry, the amount of child support would increase to $1,350 per month. The agreement also provided for $100 per month increases in child support for each $600 the husband's compensation increased.
In their amended agreement, approved by order of the court entered September 7, 1983, the provision for an increase in child support upon the remarriage of the parties was eliminated, as was the provision for increases in child support, based upon increases in husband's compensation. Child support was fixed at $750 per month. "The only exception to this waiver and the fixed amount of the child support shall be a substantial change of circumstances as specifically defined in this Amendment to the Agreement." A "Substantial Change of Circumstances" is defined in the amendment as certain circumstances relating to physical disability, retirement or a substantial reduction of income which the amendment provides "may constitute a substantial change of circumstance... ." (Emphasis supplied.) According to the amendment, the reason that a substantial change of circumstances is required is "to limit by contract the conditions on which a party could seek reductions or increase in payments or obligations required under ..." the agreements, and to express:
[T]he intention of the parties to agree that many of the circumstances used as a basis for a claimed change of circumstances are in fact foreseeable and have been considered by the parties in reading this Agreement. It is the intent of the parties to allow a change in support obligations and other obligations .. . only in the event of a fortuitous event not within the reasonable control of the parties or as otherwise specifically set forth above.
The amendment to the agreement further provided that rather than having child support terminate as the children reached the age of eighteen years, it would instead continue, in the case of the older child until age twenty-three, and in the case of the two younger children until age twenty-two, in the event they were students pursuing higher education and maintaining a permanent residence at the home of the wife. The amendment to the agreement contained a statement that, "Time shall be of the essence in the payment of child support."
*1036 On June 14, 1984, wife's attorney wrote to husband and, among other things, informed husband of wife's anticipated remarriage on or about June 30, 1984, and requested husband to increase child support from $750 per month to $1,350 per month, "as provided under Paragraph 4 of the original Agreement in the event of a remarriage of Sarah Wooten." That letter concluded by informing husband that a copy of the letter was being sent to husband's attorney "since you may want to consult with him regarding this matter." Husband paid the $1,350 from June, 1984 until June, 1986. He then ceased making child support payments and filed his action for declaratory relief alleging that he had made the payments of $1,350 from June, 1984 to June, 1986, "under the erroneous belief, based on statements from wife's attorney that $1,350 per month was the amount of child support." Husband, in his action for declaratory relief, requested the trial court to declare that he was obligated under the agreement and amendment thereto only to pay child support in the amount of $750 per month, and further, to set-off his overpayments against his future child support obligations.
The parties stipulated below that the issues raised by husband's action for declaratory relief and wife's responses thereto be decided by the trial judge based only upon his review of the pleadings and documents attached and argument of counsel. Neither husband nor wife appeared at the final hearing and no testimony was offered.
I therefore concur with the majority in holding that the trial judge was correct in finding that the agreements of the parties were clear and unambiguous and that the amendment to the agreement clearly provided that husband's obligation to continue to pay $750 per month child support was not altered by wife's remarriage. I disagree with, however, and thereby dissent from the decision of the majority that this case should be remanded to the trial judge to determine whether husband should be allowed a set-off of his overpayments of child support against his future child support obligations as prayed for in his petition. While the majority does not expressly so state, they apparently conclude that under the present state of the record, there is no showing of compelling equitable considerations entitling husband to such a set-off, and the trial court's order allowing such a set-off should be reversed. Fileger v. Fileger, 478 So.2d 105 (Fla. 2d DCA 1985); cf. Raybuck v. Raybuck, 451 So.2d 540, 541-542 (Fla. 2d DCA 1984) ["Absent compelling circumstances or a valid defense, a trial court lacks the authority to retrospectively cancel or reduce past due child support payments."]. The majority, however, would remand for further evidentiary hearings on that issue when the parties have not so requested and deliberately chose to offer no evidence in the original proceedings below.
First of all, to allow such a set-off violates the general rule of law followed by most jurisdictions that have considered the issue. That rule provides that payments made by a father to or for the benefit of his children voluntarily and not pursuant to a divorce decree may not be credited by him against other amounts due and owing under the decree absent a showing of compelling equitable circumstances that would justify such a setoff. See 24 Am.Jur.2d 1061, § 1077, Divorce and Separation; Annot. 47 A.L.R.3d 1031, 1055. Other courts have found such compelling equitable circumstances to exist where: (1) the payor spouse supports the children and the children were not living with the custodial parent or the children were self-supporting (Kinsey v. Kinsey, 425 So.2d 483 (Ala. Civ. App. 1983)); (2) excess medical or dental payments or other bills were paid and the custodial parent agreed (Lopez v. Lopez, 125 Ariz. 309, 609 P.2d 579 (App. 1980); Payson v. Payson, 442 N.E.2d 1123 (Ind. App. 1982); Hamilton v. Hamilton, 421 So.2d 291 (La. App. 1982)); (3) excess educational expenses were paid (Mooty v. Mooty, 131 Fla. 151, 179 So. 155 (1938)); or (4) payments for food, clothing were made (Frazier v. Rainey, 227 Ga. 350, 180 S.E.2d 725 (1971)).
While, as the majority states, Florida courts have acknowledged that a showing of sufficient equitable circumstances may *1037 justify a set-off, none of the Florida decisions have disavowed the general rule that absent the showing of the requisite equitable circumstances, set-offs are not allowed for overpayments purposely and voluntarily made to the custodial parent. Hinton v. Reynolds, 442 So.2d 1111 (Fla. 4th DCA 1983); Tash v. Oesterle, 380 So.2d 1316 (Fla. 3d DCA 1980); Jimenez v. Jimenez, 309 So.2d 38 (Fla. 3d DCA 1975). One Florida court has acknowledged and applied the general rule as recognized by the New York courts in a case involving application of New York law. Bloom v. Bloom, 414 So.2d 1153, 1156 (Fla. 3d DCA 1982).
Under the circumstances of this case as the parties chose to present them to the trial judge, I conclude that the husband's overpayments were "voluntary" and therefore not subject to equitable consideration warranting a set-off, and should not be remanded for further evidence when the parties deliberately chose to present no evidence below. It seems to me that if the trial court is able to find, and this court affirms the fact that the Amendment to the Agreement is clear and unambiguous, then the Amendment to the Agreement should have been clear and unambiguous to the husband. If then, the husband chose to make the excess payments without contest and in light of the clear and unambiguous language of the Amendment to the contrary, it must be concluded he did so voluntarily. That is especially true in light of the fact that wife's attorney's letter of June 14, 1984 concluded with the admonition that husband might want to confer with his attorney in regard to this matter. Important to my determination of the voluntary nature of husband's payments, as well as to my conclusion that the case should not be remanded, is the fact that this action upon the parties request and stipulation was determined in the trial court without any testimony and only on the pleadings, wherein husband had alleged that his overpayments were made "under the erroneous belief," based on wife's attorney's representations, that $1,350 was the correct amount of child support.
An Illinois appellate court applied the general rule of law on this subject in just such a situation in Harner v. Harner, (1st Dist. 1982), 105 Ill. App.3d 430, 61 Ill.Dec. 312, 434 N.E.2d 465. In that case a father had continued to pay child support for one of three children who had reached majority. The final judgment of divorce had provided that a total unallocated amount of child support was to be abated by a fixed percentage as each child reached majority. Before reducing child support for the child that had reached majority, the father had overpaid the mother by $3,360.00. The wife refused to refund this overpayment. The father testified he was unaware of his right to reduce child support upon the child reaching majority. The Illinois court in refusing the husband a set-off because of his overpayments stated:
The question of whether a parent may use overpayments of child support to off-set other amounts actually due and owing has apparently not been answered in Illinois. The general rule is that payments made for the benefit of children which are voluntary and not pursuant to a divorce decree may not be credited against other amounts due under the decree. (Whitman v. Whitman (1980), Ind. App., 405 N.E.2d 608; Webb v. Webb (Mo. App. 1971), 475 S.W.2d 134; Horne v. Horne (1968), 22 N.Y.2d 219, 239 N.E.2d 348, 292 N.Y.2d 411.) This is true even where, as here, the payments are made under the mistaken belief that they are legally required. (Crowder v. Crowder (La. App. 1974), 296 So.2d 842 see Annot., 47 A.L.R.3d 1031, 1058-61 (1973).) The policy underlying this rule is to prevent the supporting parent from, in effect, unilaterally modifying the support decree and thereby affecting the expectations of the custodial parent as to support payments. We find merit to this rule and therefore adopt it.
61 Ill.Dec. at 315, 434 N.E.2d at 468.
Two Indiana cases have applied this general rule in language particularly appropriate to my conclusions as to the proper rule to apply to the circumstances in the case before us. In Haycraft v. Haycraft, (1st Dist. 1978), 176 Ind. App. 211, 375 N.E.2d 252, a husband had been ordered to pay to *1038 the wife $35 per week as child support. Five years after the divorce husband and wife agreed that he would pay $40 per week and he did so for 139 weeks. Shortly thereafter husband ceased making payments altogether and wife sought to collect the arrearages. Husband argued that his overpayments should be credited against the amount owed. In ruling against the husband the Indiana court said:
Since Dudley and Nancy had no power to modify the terms of the original support order by means of an extrajudicial agreement, any excess payment made under that supposed agreement had to be considered a gratuity or at least a voluntary contribution for the support of the children, and not a prepayment of future support obligations. If non-court approved prepayments, such as those which Dudley suggests, were to be permitted, it would be possible for a parent, who is obligated to pay support, to build up a substantial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.
375 N.E.2d at 255.
Later, another Indiana Court of Appeals cited Haycraft with approval and further stated regarding the goal of the "regularity and continuity of court decreed support payments," that:
Obviously, it is of little merit, with respect to this goal, that at some earlier time the party bearing the obligation paid more than he had to, and of no consequence whatsoever that property was contributed "to the benefit of the wife" (emphasis added), since it is the welfare of the dependent children rather than the relative financial well-being of either of the individual parents which support payments are designed to serve. Accordingly, the settled law of this state, which the husband has failed to distinguish from the circumstances of the instant case, is that a noncustodial parent is "`required to make the payments in the manner, amount and at the times required by the support order embodied in the divorce decree, at least until such order was modified or set aside,'" Haycraft v. Haycraft, supra 375 N.E.2d at 255 (emphasis in original), quoting Stitle v. Stitle, (1964) 245 Ind. 168, 182, 197 N.E.2d 174, 182-183, and any excess under a contrary agreement between the parties must be viewed as a gratuity or as a voluntary contribution for the support of the children.
In Re Marriage of Bradach, (Ind. App. 4th Dist. 1981) 422 N.E.2d 342, 352-353.
In my opinion, since, at the request of the parties, the pleadings below were the sole basis for resolving the dispute between the parties, husband has not shown any equitable considerations demonstrating why we should depart from the general rule and we should not on our own initiate remand for further evidentiary hearings when the parties did not wish to present any evidence and have not requested to do so now. While the third district in Bloom was applying and citing New York law, the court did state:
The general rule is that payments made by a father to or for the benefit of his children voluntarily and not pursuant to a divorce decree may not be credited by him against other amounts due and owing under the decree. Horne v. Horne, 22 N.Y.2d 219, 239 N.E.2d 348, 292 N.Y.S.2d 411 (1968); Soltow v. Soltow, 47 A.D.2d 652, 364 N.Y.S.2d 28 (App.Div. 1975). Since the payments in this case were gratuitous, the law was properly applied.
414 So.2d at 1156.
I believe, since the husband has chosen not to present evidence below sufficient to demonstrate a compelling reason not to apply the general rule, the holding of the trial court allowing the set-off of husband's overpayments should be reversed. When a reversal is necessary because of a lack of evidence, further evidentiary proceedings in the trial court should not be ordered on the theory that some additional evidence *1039 might be available and may be presented on rehearing. In the absence of very limited exceptions which do not appear in this case, we should normally indulge a conclusive presumption that the parties have presented all available, competent and material evidence supporting their positions and any failure to do so is at their election and risk. Apalachicola Northern R.R. Co. v. Tyus, 114 So.2d 33, 38-39 (Fla. 1st DCA 1959), rev'd. on other grounds, Tyus v. Apalachicola Northern R.R. Co., 130 So.2d 580 (Fla. 1961). Especially should that be the rule when the parties deliberately waive the presentation of testimony. Where the parties have had the opportunity to present evidence on an issue and have chosen not to, to remand for further evidence on the issue is to inappropriately allow them "two bites of the apple." Broward County v. Coe, 376 So.2d 1222 (Fla. 4th DCA 1979).
The established rule seems to be that a cause should not be remanded for further evidence where there is such an insufficiency of evidence as to leave a material point in controversy uncertain unless: (1) the point is covered by the pleadings; (2) it affirmatively appears that additional evidence is available and; (3) justice seems to require a more complete development of the rights of the parties. Atlantic & Gulf Properties, Inc. v. Palmer, 109 So.2d 768, 771 (Fla. 3d DCA 1959). Not only does it not affirmatively appear in this case that additional evidence is available, it, on the contrary, affirmatively appears that the parties have presented all the evidence they chose to provide the trial judge. We should not be in the business of directing the trial tactics of the parties.
I concur in affirming the judgment of the trial court in regard to the finding that the parties' amended agreement fixed future child support at $750 per month. I would reverse the portion of the judgment that allowed husband a set-off of his overpayments against his remaining child support obligations.