2023 IL App (2d) 210688-U
No. 2-21-0688
Order filed December 14, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 94-CF-1239 |
| | ) | |
| SVONDO WATSON, | ) | Honorable |
| | ) | Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court correctly denied defendant's motion to amend the sentencing judgment to include presentence custody credit; the credit was already included in the judgment and defendant had "fair warning" that additional credit could be— and was—removed by a supreme court decision issued during his direct appeal; affirmed on different grounds.

¶ 2   In this case, a criminal defendant brought a *nunc pro tunc* motion some 25 years into his sentence to "correct" his sentencing judgment regarding pretrial custody credit. See Ill. S. Ct. R. 472(a)(3) (eff. May 17, 2019). The trial court denied the motion, and because the written order is

consistent with the sentencing court's pronouncement and an intervening decision from our supreme court eliminated the credit defendant sought, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In the early morning hours of June 7, 1994, Leo McDaniel and his girlfriend, Keisha Twitty, were shot multiple times with a .380 caliber pistol as they slept in their apartment in Lombard. McDaniel died and Twitty was seriously injured. Detectives noted that there was no forced entry into the residence.

¶ 5      The investigation quickly focused on defendant who had been staying at the apartment for over a week before the shooting. According to Twitty, defendant was the only other person who had a key to the apartment, and she identified defendant as the shooter. Separately, at an apartment in Chicago that defendant also stayed at, the police found .380 ammunition and around $14,000, which were believed to be drug-sale proceeds belonging to McDaniel. Defendant also gave a short confession to the shootings, but later attempted to recant it. The State's theory of the case was that defendant shot McDaniel and Twitty so that he could keep McDaniel's drug money.

¶ 6      A jury initially found defendant guilty, but we reversed for trial errors not relevant here. *People v. Watson*, No. 2-95-0809 (1996) (unpublished order under Supreme Court Rule 23). In 1998, following his retrial, defendant was found guilty of first-degree murder (720 ILCS 5/9-1(a)(1) (West 1994)), attempted first-degree murder (*id.* § 8-4(a), 9-1(a)(1)) and aggravated battery with a firearm (*id.* § 12-4.2(a)(1)).

¶ 7      Meanwhile, apart from defendant's case and before his sentencing, a conflict had arisen in Illinois' reviewing courts regarding the interpretation of a sentencing statute, 730 ILCS 5/5-8-4(e) (West 1994). Prisoners in Illinois are generally entitled to one day of credit against their sentence for each day spent in presentence custody, and districts of the appellate court were divided on the

question of whether a defendant is entitled to credit for presentence time served for *each* consecutive sentence or a *single* credit toward the aggregate sentence. In *People v. Johnson*, 286 Ill. App. 3d 597, 601 (1997), we adopted the former view, which in effect granted defendant's two days of credit for each day in the county jail. The First, Third, Fourth, and Fifth Districts, however, adhered to the view of issuing a single credit to apply to the combined aggregate term. See *People v. Biggs*, 294 Ill. App. 3d 1046, 1054-55 (1st Dist. 1998); *Johnson v. Washington*, 294 Ill. App. 3d 472, 474-75 (3d Dist. 1998); *Feazell v. Washington*, 291 Ill. App. 3d 766 (4th Dist. 1997); *People v. Plair*, 292 Ill. App. 3d 396 (5th Dist. 1997).

¶ 8    At the time of defendant's sentencing, on July 29, 1998, the trial court (Hon. Ann B. Jorgensen) applied our holding in *People v. Johnson*, 286 Ill. App. 3d 597, as it was the appropriate authority to follow. See *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 92 (1997) ("when conflicts arise amongst the districts, the circuit court is bound by the decisions of the appellate court of the district in which it sits"). Accordingly, in pronouncing sentence, the trial court made clear that defendant would receive separate credit for time served on each of the consecutive sentences for first-degree murder, attempted first-degree murder, and aggravated battery. The court sentenced defendant to a 60-year prison term for first-degree murder and 30-year prison terms for each of the other offenses. The 30-year prison terms were to be served concurrently with one another; Twitty was the named victim for both convictions and attempted murder was the more serious offense. However, that sentence was required to be served consecutively with the 60-year term for murder. 730 ILCS 5/5-8-1 (West 1994).

¶ 9    With respect to presentence credit, the court told defendant the following:

> "You will receive credit for all the time [(1513 days)] that you have previously
> spent in custody on this case.

And under the current law in the Second District, it appears to me you will receive credit on *both counts* of the—*both counts*—you will receive credit for all the time you have previously been in custody *both* on the first-degree murder count as well as the attempt murder count.

I make that ruling based on the fact that that's the status of the case law in the Second District now, and it is at this time that you are being sentenced and should receive the benefit of that case law."

¶ 10　Defense counsel asked whether the mittimus would reflect that ruling and the court said that it would. We note that the trial court's use of the word "both" referred to the murder and attempted murder counts. In addition, although the written sentencing orders did *not* contain a reference to *People v. Johnson*, 286 Ill. App. 3d 597, *all three* of the orders stated that "defendant shall receive credit on this count for all time in custody since 6-7-94"—or 1513 days.

¶ 11　Defendant filed a motion to reconsider his sentence, which the trial court denied. No issue regarding presentence custody credit was raised. Defendant filed a timely notice of appeal. On appeal, defendant argued that the trial court erred in denying his motion to suppress statements to police. No issue regarding presentence custody credit was raised. We determined that there was no error in the admission of defendant's statements and affirmed. *People v. Watson*, 315 Ill. App. 3d 866 (2000) (*Watson II*).

¶ 12　While defendant's direct appeal was pending, our supreme court decided *People v. Latona*, 184 Ill. 2d 260 (1998), which overruled our decision in *Johnson*, and made clear that defendants were entitled only to a single day of credit for each day in custody against their aggregate sentence. As defendant raised no issue concerning his sentence, however, the fact that defendant received

credit against both his murder sentence and his concurrent sentences was never addressed in his direct appeal.

¶ 13    In 2008, defendant filed a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)) asserting that the first-degree murder statute was unconstitutional. Later, defendant amended his petition to include a claim that he was improperly arrested on the complaint of a peace officer, without consultation with the State's Attorney. No issue regarding presentence custody credit was raised. The trial court dismissed the petition, and we affirmed. *People v. Watson*, No. 2-09-0532 (2010) (unpublished order under Illinois Supreme Court Rule 23) (*Watson III*).

¶ 14    On October 7, 2021, defendant filed a motion to amend the mittimus *nunc pro tunc* to "correct" the written judgment. Defendant sought to have the credit applied separately to each conviction. Attached to the motion was a "Sentence Calculation Worksheet" (which we will address below) as well as a letter from the Du Page County Sheriff showing the time defendant spent in the county jail.

¶ 15    The trial court denied the motion on its belief that defendant was not entitled to "double credit" for each day spent in presentence custody and further suggested that what defendant was seeking would result in a void sentence. Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    At issue in this appeal is whether the trial court properly denied defendant's "*nunc pro tunc*" motion, which as we noted earlier was cognizable under Rule 472. The trial court denied defendant's motion, finding that he was, in effect, seeking "double credit," which would thereby create a void sentence. We determine that the trial court properly denied the motion, although we make that determination on different grounds.

¶ 18    We review *de novo* whether a defendant is entitled to presentence custody credit as well as whether an order qualifies for a *nunc pro tunc* correction. See *People v. Jones*, 2016 IL App (1st) 142582, ¶ 12; *People v. Jones*, 2015 IL App (4th) 130711, ¶ 12. The phrase *nunc pro tunc* is Latin for "now for then" and, in law, it connotes the retroactive correction of errors. See, *e.g.*, *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 294 n. 3 (2001). In other words, " '[a] *nunc protunc* order is an entry now for something previously done, made to make the record speak now for what was actually done then.' " (Emphasis omitted.) *Harreld v. Butler*, 2014 IL App (2d) 131065, ¶ 13 (quoting *Kooyenga v. Hertz Equipment Rentals, Inc.*, 79 Ill. App. 3d 1051, 1055 (1979)).

¶ 19    It is axiomatic that for a *nunc pro tunc* correction to issue, there must first be an error to correct. That did not happen in this case. The sentencing judge's written orders on all *three* of defendant's convictions state that defendant would receive 1513 days' credit on each conviction, *exactly* as the trial court stated pursuant to *People v. Johnson*, 286 Ill. App. 3d 597 (1998). Accordingly, none of the orders varied from the sentencing judge's oral pronouncement of defendant's sentence, and there was, therefore, nothing to correct. We could affirm on this basis alone.

¶ 20    We note, too, that the trial court denied defendant's *pro se* motion because the court believed that what defendant was seeking was "double credit." The trial court, however, was mistaken in part; defendant was *told* that he would get double credit, as the sentencing judge stated pursuant to *Johnson*, which was the law of the district at the time defendant was sentenced. *Johnson*, however, was not the final point on that matter.

¶ 21    While defendant's direct appeal was pending, our supreme court issued its decision in *People v. Latona*, 184 Ill. 2d 260 (1998), which overruled *Johnson*. Defendant was sentenced on

July 29, 1998, and his notice of appeal was filed on September 2, 1998. The decision in *Latona*, 184 Ill. 2d 260, was handed down on November 19, 1998, while defendant's direct appeal was pending. A basic principle of criminal procedure is that judicial decisions announcing "a new rule for the conduct of criminal prosecutions [are] applied retroactively to all cases, state or federal, pending on direct review or not yet final" (*Griffith v. Kentucky*, 479 U.S. 314, 328 (1987))—and defendant's conviction was *not* yet final at the time *Latona* was decided. See also *People v. Hudson*, 195 Ill. 2d 117, 126 (2001). Thus, because the holding in *Latona* applied retroactively to defendant's sentence, he has no legitimate claim to "double credit" under *Johnson*, which *Latona* explicitly overruled.

¶ 22    Our determination causes defendant no injury as defendant had "fair warning" regarding the conflicting interpretations of 730 ILCS 5/5-8-4(e) (West 1994), and how that conflict could impact his sentence. See *People v. Granados*, 172 Ill. 2d 358, 370-72 (1996). We further note one additional problem with defendant's *nunc pro tunc* claim. The "Sentence Calculation Worksheet" that defendant submitted is from 1998 and it does not appear to accurately reflect how the Illinois Department of Corrections (IDOC) is presently treating his sentence. The worksheet that defendant submitted shows his projected "out" date as June 7, 2039, yet IDOC's website, which we take judicial notice of, states that his projected parole date is October 9, 2037. See *Internet Inmate Status*, Ill. Dep't of Corr., https://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=B67687 (last visited Dec. 8, 2023) [https://perma.cc/8UCW-AN2C]. We cannot discern how IDOC arrived at defendant's revised projected parole date because it appears to be based on a combination of presentence custody credit and good-conduct credit, and in general, both are internal matters for IDOC's administration. See *People v. Joyner*, 20222 IL App (2d) 210045, ¶¶ 29-33. Of course, there may be a difference between what a sentencing order states, and how

IDOC treats that order in its projections. To the extent defendant has a concern about the latter, his remedy, if any, would lie in a *mandamus* proceeding against IDOC's Director and not in a *nunc pro tunc* proceeding to "correct" orders that were consistent with the sentencing judge's oral pronouncements.

¶ 23                                    III. CONCLUSION

¶ 24    As defendant has not identified an error subject to *nunc pro tunc* correction, and the decision in *Latona* effectively nullified his "double credit," we affirm the judgment of the circuit court of Du Page County denying defendant's motion under Illinois Supreme Court Rule 472(a)(3).

¶ 25    Affirmed.