# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Jayko v. Fraczek*, 2012 IL App (1st) 103665

---

| | |
|---|---|
| Appellate Court Caption | ALLEN JAYKO, a Minor, by and Through His Mother and Next Friend PATRICIA JAYKO; and Patricia Jayko, Individually, Plaintiffs-Appellees, v. JOSEPH E. FRACZEK and JOHN J. FRACZEK, Defendants-Appellees (St. Alexius Medical Center, as Health Care Lienholder, Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-3665 |
| Filed | March 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the adjudication of a hospital's lien against plaintiffs' personal injury action pursuant to the Health Care Services Lien Act, the trial court's findings that plaintiffs' motion to adjudicate the hospital's lien was an *in rem* proceeding for which notice by certified mail was sufficient and that directing the hospital's certified mail to the address provided on the hospital's bill was effective were affirmed, but the cause was remanded with directions for the trial court to consider the limited issue of whether a *nunc pro tunc* order should be entered to reflect what occurred when plaintiffs presented their motion to adjudicate the lien to $0 and their motion to approve the settlement and distribution of their claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-05219; the Hon. Marcia Maras, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part; remanded in part with directions. |
| Counsel on Appeal | David H. Moon, of Powers & Moon LLC, of Deerfield, for appellant. |
| | No brief filed for appellees. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Presiding Justice Epstein and Justice Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1    St. Alexius Medical Center, a community health center located near Chicago in Hoffman Estates, Illinois (hereinafter St. Alexius), appeals from an order denying its motion to readjudicate its health care provider's lien against Allen Jayko's personal injury action 16 months after the trial court adjudicated the $11,638 lien to $0. Although St. Alexius used certified mail delivery to notify Jayko of its lien pursuant to section 10(b) of the Health Care Services Lien Act (770 ILCS 23/10(b) (West 2006)) (hereinafter Act), it argued Jayko could not use certified mail to deliver notice of his motion and hearing date to adjudicate the lien. St. Alexius contends it was entitled to be served with summons of process, based on its reading of section 30 of the Act and three rules concerning the service of complaints in Illinois. 770 ILCS 23/30 (West 2006). Alternatively, if the use of certified mail was effective, then St. Alexius, which is one of four hospitals in the Alexian Brothers suburban hospital network, contends that addressing the envelope to Alexian Brothers rendered the notice defective.

¶ 2    Our first consideration is the appropriate standard of review and the issues to be addressed. The trial court rendered a final judgment order when it adjudicated all the health care provider liens to $0. When St. Alexius motioned the trial court to "[v]oid any previously entered order" concerning the lien and adjudicate St. Alexius' rights once more, St. Alexius failed to specify the section of the Code of Civil Procedure that governed its motion. 735 ILCS 5/1-101 *et seq.* (West 2006) (hereinafter Code). The motion is properly viewed as a petition for relief from a final judgment order, because it indicates St. Alexius was seeking the court's assistance more than 30 days after the Jaykos' negligence action had been dismissed with prejudice, all health care provider liens had been adjudicated, and all settlement funds had been disbursed. See *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484, 639 N.D.2d 1282, 1289 (1994) (meticulous practice requires proper designation of all motions; when an undesignated motion is reviewed, the court may determine its classification by examining the grounds, the relief requested, and the treatment given in the

trial court). A petition for relief from final judgment is governed by section 2-1401 of the Code. 735 ILCS 5/2-1401(e) (West 2006). St. Alexius also apparently considers its motion to have been governed by section 2-1401, because it relies exclusively on *White*, which addressed a section 2-1401 ruling, for the proposition that we should review the ruling *de novo*. *White v. Ratcliffe*, 285 Ill. App. 3d 758, 763, 674 N.E.2d 906, 910 (1996).

¶ 3    Generally, a petition for relief from a final judgment order must meet the criteria specified in section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)) (Code) and is subject to the sound discretion of the trial court, and a section 2-1401 ruling is reviewed for an abuse of discretion only, which is a deferential standard of review. *White*, 285 Ill. App. 3d at 763, 674 N.E.2d at 910. St. Alexius argues this appeal presents an exception to that general rule and is subject to the *de novo* standard. St. Alexius points out that its section 2-1401 petition challenged the authority of the trial court to adjudicate the lien on grounds that St. Alexius was entitled to service of process (meaning personal service by a sheriff's deputy or a specially appointed process server; or with the court's approval a combination of publication and mailing). Proper service is a prerequisite for a court to acquire personal jurisdiction over a party, a dispute over personal jurisdiction presents a question of law, and rulings as to questions of law are considered *de novo*. *White*, 285 Ill. App. 3d at 764, 674 N.E.2d at 910; *Cameron v. Owens-Corning Fiberglas Corp.*, 296 Ill. App. 3d 978, 983, 695 N.E.2d 572, 576 (1998). Under the *de novo* standard, we give little or no deference to the decision maker's ruling. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 265, 659 N.E.2d 961, 970 (1995). None of the appellees have responded to St. Alexius' appeal or requested additional time to do so. Accordingly, we ordered that the case be resolved on the basis of the record and St. Alexius' brief only. Ill. S. Ct. R. 343(a) (eff. July 1, 2008); *Stewart v. Lathan*, 401 Ill. App. 3d 623, 624, 929 N.E.2d 1238, 1240 (2010). We now find that the *de novo* standard is controlling. In addition, St. Alexius' specific arguments require us to interpret and give effect to section 30 of the Act, and questions of statutory construction are also questions of law and thus reviewed *de novo*. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603, 900 N.E.2d 1095, 1102 (2008). Furthermore, when proper service is lacking and the court does not acquire personal jurisdiction, the judgment entered is considered void *ab initio*. *White*, 285 Ill. App. 3d at 763, 674 N.E.2d at 911. We point this out because a party seeking relief from a void judgment does not need to comply with the terms of section 2-1401 of the Code of Civil Procedure, and does not need to make the usual allegations of a meritorious defense to the action, due diligence in presenting that defense to the trial court, and due diligence in bringing the petition. 735 ILCS 5/2-1401 (West 2006); *LaMotte v. Constantine*, 92 Ill. App. 3d 216, 218, 416 N.E.2d 23, 25 (1980) (indicating relief from a void judgment is not limited by section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, ¶ 72)); *Krain v. Illinois Department of Professional Regulation*, 295 Ill. App. 3d 577, 580, 696 N.E.2d 692, 693 (1998) (indicating section 72 of the Civil Practice Act is now known as section 2-1401 of the Code of Civil Procedure). Therefore, our *de novo* analysis will be limited to whether the certified mail delivery accomplished its purpose.

¶ 4    In 2004, when he was 11, Allen was riding a bicycle near his home in Streamwood, Illinois, when he was struck by a car being driven by his 17-year-old neighbor Joseph E.

Fraczek. Allen's left ankle was broken and he suffered other minor injuries. He spent the night in the hospital and the next few weeks with a cast and crutches and incurred medical bills totaling $22,279, of which $14,638 was for his hospital care. The hospital's bill dated October 13, 2004, was printed on letterhead which most prominently displayed what appears to be the crest of the Alexian Brothers Catholic order. Next to the crest, in a large, stylized font were the most conspicuous words on the page, "Alexian Brothers," and just below that in a smaller version of the font, "St. Alexius Medical Center." This section was followed by contact information:

> "1555 Barrington Road
> Hoffman Estates, Illinois 60194
> Main Hospital: (847) 843-2000
> Business Office: (847) 843-4040
> www.stalexius.org"

Below this letterhead, the invoice was addressed to Allen, in care of his father, Lawrence Jayko, and in the middle portion of the page were about 30 itemized charges for the boy's care on October 7 and 8, 2004. In the bottom left corner of the page, in the smallest font on the page, were the words:

> "Remit Payment to:
> St. Alexius Medical Center
> 21219 Network Place
> Chicago, IL 60673-1212
> This bill contains charges for hospital services only. Charges for physician services related to your care will be billed separately."

The second page of the invoice was identical to the first, with the exception of the middle portion, which contained a few more itemized entries, subtotals, and the total amount due. The hospital attached its two-page invoice to a "Past Due" letter addressed to Allen's father on May 22, 2008. The cover letter included the same prominent crest and typeface for "Alexian Brothers" and less prominent typeface for "St. Alexius Medical Center" at the top of the page. The contact information was shifted to the top, right corner of the page, and again consisted of the "Main Hospital" telephone number and the street address in Hoffman Estates, although the ZIP code was changed from "60194" to "60619." The hospital indicated "a third-party liability carrier" never responded to the invoice, asked for the Jaykos' "assistance in resolving this claim," and then stated:

> "Payment can be made via the following options:
> 1. Contact our office to pay by credit card today.
> 2. Mail payment to the address below. (Be sure to attach the bottom section with your payment.)
> 3. Contact our office to establish financial arrangements immediately."

The letter concluded with the words "Thank you for your assistance, St. Alexius Medical Center (847) 843-4040," which was the telephone number previously stated as the "Business

Office." A dark horizontal line separated this text from the bottom third of the page, where it was stated:

"Payment Address: St. Alexius Medical Center

21219 Network Place

Chicago, IL 60673-1212,"

followed by five blank lines which could be filled in with a payee's credit card information.

¶ 5      Acting on her minor son's behalf and pursuant to the statute commonly known as the family expense act (750 ILCS 65/15 (West 2004)), Patricia Jayko sued Joseph and the car's owner, John J. Fraczek, in 2006 for Joseph's negligence. Allen's parents did not have medical insurance when he was injured. They were able to pay $5,291 for his care, including $3,000 to the hospital.

¶ 6      In 2008, the hospital notified Allen, the Jaykos' lawyer, and the Fraczeks' insurer that the hospital was asserting a health care provider's lien on the proceeds of the cause of action. A lien is a legal claim on money or property recovered by the injured person; it is a property interest which gives the lienholder security for payment of a debt. *Galvan v. Northwestern Memorial Hospital*, 382 Ill. App. 3d 259, 272, 888 N.E.2d 529, 541 (2008); *In re Estate of Cooper*, 125 Ill. 2d 363, 369, 532 N.E.2d 236, 238 (1988) (a lien upon an accident victim's recovery is a property interest which secures payment of a debt). Perfecting notice of a lien does not guarantee recovery; rather, notice informs the adverse party of the claim and thereby prevents that party from making a settlement in disregard of the lien. *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 392 Ill. App. 3d 1059, 1064, 911 N.E.2d 1180, 1186 (2009) (regarding attorney's lien). In order to collect, the rights of the parties must be adjudicated and the lien enforced by a court of competent jurisdiction. *Kovitz*, 392 Ill. App. 3d at 1065, 911 N.E.2d at 1186. The statute at issue applies to causes of action that accrue on or after July 1, 2003. 770 ILCS 23/5 (West 2004) (Pub. Act 93-51 § 5 (eff. July 1, 2003)).

¶ 7      Section 10(a) of the statute specifies when a health care lien arises and limits the total amount of all such liens:

"Every health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person, except services rendered under the provisions of the Workers' Compensation Act [(820 ILCS 305/1 *et seq.* (West 2004))] or the Workers' Occupational Diseases Act [(820 ILCS 310/1 *et seq.* (West 2004))], shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person. The total amount of all liens under this Act, however, shall not exceed 40% of the verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person on his or her claim or right of action." 770 ILCS 23/10(a) (West 2004).

Although section 10(a) limits the combined amount of all health care liens to 40% of the settlement, it does not preclude the various health care providers from collecting the rest of the debt that is owed. 770 ILCS 23/10 (West 2004); *Progressive Universal Insurance Co. of Illinois v. Taylor*, 375 Ill. App. 3d 495, 500, 874 N.E.2d 910, 914 (2007) "Nothing in this Act shall be construed as limiting the right of a health care professional or health care

provider, or attorney, to pursue collection, through all available means, of its reasonable charges for services it furnishes to an injured person. Notwithstanding any other provision of law, a lien holder may seek payment of the amount of its reasonable charges that remain not paid after the satisfaction of its lien under this Act." (Internal quotation marks omitted.) (quoting 770 ILCS 23/45 (West 2004))).

¶ 8 Section 10(b) of the Act specifies the contents of a health care provider's lien and indicates its "written notice" is effective whether delivered by mail or tendered in person:

"The lien shall include a written notice containing the name and address of the injured person, the date of the injury, the name and address of the health care professional or health care provider, and the name of the party alleged to be liable to make compensation to the injured person for the injuries received. The lien notice shall be served on both the injured person and the party against whom the claim or right of action exists. Notwithstanding any other provision of this Act, payment in good faith to any person other than the health care professional or health care provider claiming or asserting such lien prior to the service of such notice of lien shall, to the extent of the payment so made, bar or prevent the creation of an enforceable lien. Service shall be made by registered or certified mail or in person." 770 ILCS 23/10(b) (West 2004).

¶ 9 The lien notice at issue was written and mailed by the hospital's attorneys and it did not resemble the invoice and "Past Due" correspondence that had been mailed by the hospital. It did not include the crest or name of Alexian Brothers or any of the three addresses previously given for Alexian Brothers and St. Alexius. It stated:

"You are hereby notified that ALLEN L JAYKO was on or about 10/07/2004 injured by the alleged negligent or wrongful act of defendant, *** for which (s)he has a claim, demand or cause of action. ALLEN L JAYKO was a patient and received medical services and supplies in St. Alexius Medical Center because of said injuries.

You are further notified that St. Alexius Medical Center hereby claims a lien upon any claim or demand or cause of action which the said injured party may have in accordance with *** the Statutes of the State of Illinois in regard to health care provider liens ***."

The notice of lien concluded:

"ALISHA P. PATEL, ESQ.

POWERS & MOON, LLC

707 Lake Cook Road, Suite 102

Deerfield, IL 60015

Lienholder address: St. Alexius Medical Center

C/O Powers & Moon, LLC

707 Lake Cook Road, Suite 102

Deerfield, IL 60015."

Cover letters written on the law firm's letterhead referred to: "Lienholder/Our Client: St. Alexius Medical Center."

¶ 10      The Fraczeks failed to effectively respond to the Jaykos' lawsuit. In a written answer and affirmative defenses, they contended Allen contributed to the collision by unexpectedly riding his bicycle onto the street. However, the court barred Joseph from testifying at trial because he did not comply with orders to sit for a deposition and the Fraczeks' insurer asked in a separate declaratory judgment action to be released from any liability due to Joseph's failure to cooperate with its defense of the lawsuit. Nonetheless, in 2009, the Fraczeks' insurer offered the Jaykos a $30,000 settlement, which was about a third of the limits of Joseph's $100,000 coverage.

¶ 11      Shortly after the settlement offer, the Jaykos filed a motion to adjudicate four unresolved health care provider liens totaling $16,988, including what was then the $11,638 lien of "St. Alexius Medical Center." Section 30 of the Act specifies what must be done before the circuit court may adjudicate health care lien rights, and, we reiterate that, like section 10(b), section 30 requires a "written notice." 770 ILCS 23/30 (West 2004). Section 30 states: "On petition filed by the injured person or the health care professional or health care provider and on the petitioner's written notice to all interested adverse parties, the circuit court shall adjudicate the rights of all interested parties and enforce their liens." 770 ILCS 23/30 (West 2004). In their motion for adjudication, the Jaykos described their attorney's contractual right to one-third of the recovery ($10,000), their litigation expenses ($1,641), the four outstanding liens ($16,988), and the fact that the Jaykos did not have medical insurance when Allen was injured. The Jaykos requested that the four liens, including the one asserted by "St. Alexius Medical Center," be "reduced to zero or an amount this Court deems fair and reasonable," leaving Allen with $18,432 compensation for his injuries. According to the accompanying "Service List," the copy of the motion for "St. Alexius Medical Center" was sent by certified mail, return receipt requested to "Alexian Brothers, 1555 Barrington Road, Hoffman Estates, IL 60194." This was the name and street address that was most prominent on the hospital's invoice and correspondence in 2004 and 2008, but appeared nowhere on the notice and cover letter issued by the hospital's attorneys in 2008. It is undisputed that the certified mail was delivered as addressed. The Jaykos also prepared a petition for judicial approval of the settlement, in which they restated the offer and their proposed distribution of the funds. Circuit Court Judge Irwin J. Solganick dismissed the lawsuit pending resolution of the motion and petition, Circuit Court Judge William D. Maddux granted the motion to adjudicate the four liens to zero, and Circuit Court Judge Daniel J. Lynch granted the petition to approve the settlement and he again ordered the distribution of funds and that the liens be reduced to zero. None of the four lienholders attended the proceedings. Nonetheless, because the orders do not refer to any lienholder's absence, they are based on the merits, not merely on a lienholder's failure to appear. See *e.g.*, *Trustees of the Local 734 Bakery Drivers Health & Welfare Plan v. Wolff*, 537 F. Supp. 2d 951, 956 (N.D. Ill. 2008).

¶ 12      About 16 months later, on September 13, 2010, the hospital filed a motion to adjudicate its lien anew, on grounds that the Jaykos' notice was insufficient. Circuit Court Judge Marcia Maras considered written briefs and oral arguments from St. Alexius and the Jaykos and then denied the motion.

¶ 13      St. Alexius contends Judge Maras misconstrued the Act to permit notice by certified mailing when in fact there is no such statutory language. St. Alexius contends section 30 of

the Act does not specify how "written notice [of a petition to adjudicate a health care lien]" is to be conveyed, but we should assume it must be served like a complaint and that the rules regarding "service of process" are controlling. As we outlined above, St. Alexius invokes three rules: section 2-204 of the Code, which concerns service of process on private corporations, Supreme Court Rule 101, which concerns the contents of a summons to a defendant, and Supreme Court Rule 102, which concerns the timing of the service of a summons and complaint upon a defendant. 770 ILCS 23/10 (West 2006); 735 ILCS 5/2-204 (West 2006); Ill. S. Ct. R. 101 (eff. Feb. 1, 1996); Ill. S. Ct. R. 102 (eff. Jan. 1, 1967). St. Alexius failed to provide this court with a verbatim transcript or a bystander's report of the hearing conducted by Judge Maras, but contends the trial judge said she was relying on *Zilinger*, a federal court opinion, for the proposition that a lien adjudication is an *in rem* proceeding and does not require service of summons to the lien holder because the court does not need to acquire personal jurisdiction. *Zilinger v. Allied American Medical Insurance Co.*, 957 F. Supp. 148 (N.D. 1997). St. Alexius contends this was error because federal opinions are merely persuasive authority in this state court (*Riemer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26, 807 N.E.2d 1004 (2004)), *Zilinger* addressed a common-law lien rather than a statute-based lien, and other Illinois state court opinions are more pertinent. Thus, St. Alexius contends that once it gave notice by certified mail delivery in accordance with section 10 of the Act that it was asserting a lien against the Jaykos' tort suit, section 30 of the Act imposed a burden on the Jaykos to then file a separate complaint regarding the hospital's rights and to perfect service of process on the hospital and any other interested parties. In effect, St. Alexius is contending a lien adjudication is not an *in rem* proceeding. St. Alexius concludes that without personal service, the order adjudicating the lien to $0 is void for lack of personal jurisdiction.

¶ 14    The goal of statutory construction is to ascertain and give effect to the legislature's intent. *County of Du Page,* 231 Ill. 2d at 603-04, 900 N.E.2d at 1101. Statutes should be interpreted as a whole, meaning different sections of the same statute should be considered in reference to one another so that they are given harmonious effect. *County of Du Page*, 231 Ill. 2d at 604, 900 N.E.2d at 1101. In fact, viewing all provisions of an enactment as a whole is a fundamental principle of statutory construction. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000). Also, in construing statutes, we are to presume that the General Assembly did not intend for absurdity, inconvenience, or injustice to result from its legislation. *Michigan Avenue National Bank*, 191 Ill. 2d at 504, 732 N.E.2d at 535. In addition to the statutory language, we may consider the purpose behind the law and evils sought to be remedied, as well as the consequences that would result from construing the law one way or another. *County of Du Page*, 231 Ill. 2d at 604, 900 N.E.2d at 1102.

¶ 15    The legislature used the phrase "written notice" in two different sections of the Act, but specified in the first section only the means of serving that written notice. Section 10 of the Act describes the contents of the health care provider's "written notice" of lien and that "[s]ervice shall be made by registered or certified mail or in person." 770 ILCS 23/10(b) (West 2006). Section 30 of the Act indicates that either the injured person or the health care provider may petition for adjudication of the lien and "the petitioner[ ] [shall give] written

-8-

notice to all interested adverse parties." 770 ILCS 23/30 (West 2006). St. Alexius asks us to read these two sections of the statute as isolated, unrelated provisions and to resort, outside the Act, to some of the general rules regarding service of complaints and summons upon defendants. According to St. Alexius, once a health care provider drafts a notice of lien and delivers this simple document through certified mail, the former patient must incur the costs of filing a complaint to adjudicate the lien and obtaining personal service of the pleading. And, presumably, as the plaintiff, the former patient would also bear the responsibility and costs of pursuing resolution of that pleading through motion practice. When we follow the principle that related statutes are to be considered together, it is apparent that the General Assembly intended for service of both documents to be made by registered or certified mail or in person. There is no language in the Act which suggests the legislature intended to impose such disproportionate expense and responsibility onto the patient. We will not, under the guise of statutory construction, insert the word "complaint," "summons," or "defendant" into the Act, nor do we have any reason to resort to rules or statutes that use those terms. We find that section 30 of the Act provides for written notice of a petition to adjudicate a lien to be served by registered or certified mail or in person. 770 ILCS 23/30 (West 2006).[1]

¶ 16    The question then becomes whether due process considerations required personal service on the hospital. *Zilinger* helps us answer that question because it involved analogous circumstances. Although *Zilinger* is a federal court opinion, the case actually started in the circuit court of Cook County when a family sued their automobile insurer for breaching the uninsured motorist clause of the policy. *Zilinger*, 957 F. Supp. at 148. The family and the insurer agreed to a settlement but those settlement proceeds were subject to a lien asserted by the father's health insurer. *Zilinger*, 957 F. Supp. at 148-49. The family filed a motion to adjudicate the lien, arguing that the father's insurer was not contractually entitled to recoup funds expended for their treatment. *Zilinger*, 957 F. Supp. at 149. The family did not formally name the father's health insurer as a party to the proceeding–they simply mailed this purported lienholder a copy of the motion and a notice of when the motion would be heard by the circuit court. *Zilinger*, 957 F. Supp. at 149. The mail was timely delivered, but the health insurer did not appear at the hearing and the circuit court granted the family's motion. *Zilinger*, 957 F. Supp. at 149. Thus, the procedure and outcome were identical to what occurred in the present case.

¶ 17    The health insurer then filed a notice of removal in the federal court indicating it was exercising its right to move the case from the state court system to the federal court system. *Zilinger*, 957 F. Supp. at 149. The family countered with a motion to return the case to state court, on grounds that there was no longer any case or controversy needing adjudication. *Zilinger*, 957 F. Supp. at 149. At that point, the health insurer argued, like St. Alexius, that

---

[1]At appellate arguments, St. Alexius conceded it did not follow its proposed construction of section 30 of the Act when it filed its "Motion to Adjudicate Lien of St. Alexius Medical Center Pursuant to 770 ILCS 23/30" 16 months after it had been adjudicated to $0. 770 ILCS 23/30 (West 2006). St. Alexius acknowledged it merely filed a motion, not a complaint, which it delivered through certified mail, not by service of process, but it contended this was proper procedure because the Jaykos were already parties to a lawsuit.

the order adjudicating the lien to $0 was void because the circuit court never obtained personal jurisdiction by service of summons. *Zilinger*, 957 F. Supp. at 149. The federal court, however, was persuaded that the circuit court did not need to obtain personal jurisdiction over the health insurer because a lien adjudication is an *in rem* action. *Zilinger*, 957 F. Supp. at 149. The federal court reached this conclusion due to state court precedent indicating a trial judge's adjudication of competing rights to settlement proceeds is an *in rem* action concerning the disposition of property within Illinois for which service by mail is permissible as described in Supreme Court Rule 11. *Zilinger*, 957 F. Supp. at 149-50 (distinguishing between *in rem* and *in personam* proceedings) (quoting *Austin v. Royal League*, 316 Ill. 188, 193, 147 N.E. 106, 109 (1925)); *Wilson v. Smart*, 324 Ill. 276, 281-82, 155 N.E.2d 288, 291 (1927) (indicating property of a nonresident defendant may be subjected to payment of alimony and support upon service by publication); Ill. S. Ct. R. 11 (eff. Nov. 15, 1992). See also *Rockwood Sprinkler Co. v. Phillips Co.*, 265 Ill. App. 267, 276, 1932 WL 2753 (1932) (stating a lien proceeding is a proceeding *in rem*).

¶ 18     Supreme Court Rule 11, which is entitled "Manner of Serving Papers Other Than Process and Complaint on Parties Not in Default in the Trial and Reviewing Courts," provided at the time: "papers shall be served *** by depositing them in a United States post office *** plainly addressed *** to the party at his business address *** with postage fully prepaid." Ill. S. Ct. R. 11 (eff. Nov. 15, 1992) (the rule has since been amended with gender-neutral wording and to provide for sending documents via third-party commercial carriers such as FedEx and UPS. See Ill. S. Ct. R. 11 (eff. Dec. 29, 2009)). Supreme Court Rule 2(b)(3) defines "paper" as follows: " 'Paper' means pleading, *motion, notice*, affidavit, memorandum, brief, petition, or other paper or combination of papers required or permitted to be filed." Ill. S. Ct. R. 2(b)(3) (eff. July 1, 1982).

¶ 19     According to the Illinois Supreme Court:

" '*In rem*' jurisdiction is '[a] court's power to adjudicate the rights to a given piece of property, including the power to seize and hold it.' Black's Law Dictionary 856 (7th ed. 1999). '[A] proceeding in rem is one which is taken directly against property or one which is brought to enforce a right in the thing itself.' *Austin v. Royal League*, 316 Ill. 188, 193[, 147 N.E. 106] (1925). The legal fiction underlying an *in rem* proceeding is that the 'property, not the owner of the property, is liable to the complainant. It treats property, therefore, as the defendant, susceptible of being tried and condemned, while the owner merely gets notice, along with the rest of the world, and may appear for his property or not.' R. Waples, *Treatise on Proceedings In Rem* § 1, at 2 (1882)." *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 532, 931 N.E.2d 1190, 1195 (2010).

¶ 20     Put another way, an *in rem* proceeding affects specific property within the jurisdiction of the court and does not adjudicate any personal claim or personal liability. Thus, a statutory lien proceeding is additional to or cumulative of other remedies for enforcement of the contract from which the lien arose. *Rockwood Sprinkler*, 265 Ill. App. at 276, 1932 WL 2753. "Independently of the lien given by the statute, a creditor may enforce his contract in any appropriate [*in personam* or *in rem*] common law action, but can have one satisfaction only." *Rockwood Sprinkler*, 265 Ill. App. at 276, 1932 WL 2753 (holding that a creditor's failure

-10-

to enforce a mechanic's lien against real property would not bar the creditor's breach of contract action).

¶ 21    We are unpersuaded by St. Alexius' suggestion that the settlement dollars or circuit court proceedings in *Zilinger* were somehow different from the settlement and hearing at issue. St. Alexius emphasizes that *Zilinger* involved a lien arising from the common law rather than from a statute, but St. Alexius fails to explain why the source of the lien has any impact on the fact that a *res* is a *res* and that proceedings concerning rights to a *res* are *in rem* proceedings.

¶ 22    Zilinger is well founded in Illinois law and it has since been applied in *Trustees of the Local 734*, 537 F. Supp. 2d at 956, a federal case involving an Indiana tort action and Illinois lienholders. The lien claimants were not made parties to the Indiana tort action or a related insurance case, no summons was served on either of them, but they were notified through certified mail delivery of a motion to adjudicate the liens and of a specific hearing date in Indiana. *Trustees of the Local 734*, 537 F. Supp. 2d at 956. Neither lien claimant attended the hearing, but the court's adjudication, like the order at issue here, was based on the merits of the moving party's arguments rather than on the failure of the lien claimants to appear. *Trustees of the Local 734*, 537 F. Supp. 2d at 956. The lien claimants later sued the Indiana settlement recipients in an Illinois federal court, but that court reasoned that (1) the motion to resolve the lien on the settlement proceeds concerned an *in rem* proceeding for which notice by certified mail was adequate, (2) due process did not require service of summons or formal designation of the lienholders as parties, (3) the lien had been adjudicated, and (4) *res judicata* barred further proceedings. *Trustees of the Local 734*, 537 F. Supp. 2d at 958-59 (due process requires that those having or claiming an interest in a *res* be provided with notice reasonably calculated to apprise them of the pendency of the action and afford them an opportunity to present their objections; liens may be adjudicated ancillary to the underlying proceeding; and due process can be satisfied by certified mailing of a hearing date (citing *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 795 (1983)). See also *McCallum v. Baltimore & Ohio R.R. Co.*, 379 Ill. 60, 69, 39 N.E.2d 340, 344 (1942) (liens on settlement funds were properly adjudicated in an *in rem* proceeding in the court in which the funds had been deposited).

¶ 23    This line of authority leads us to conclude that the Jaykos' $30,000 settlement proceeds were a *res* and, thus, the adjudication of St. Alexius' statutory lien on that property was an *in rem* proceeding for which personal service on and personal jurisdiction over the health care provider was unnecessary. The Jaykos not only complied with section 30 of the Act, but also satisfied due process when they gave notice through certified mailing. 770 ILCS 23/30 (West 2006).

¶ 24    We decline to apply cases regarding workers' compensation lien rights, namely, *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 651 N.E.2d 601 (1995), and *Augsburg v. Frank's Car Wash, Inc.*, 103 Ill. App. 3d 329, 431 N.E.2d 58 (1982). St. Alexius relies on these opinions even though section 10 of the statute at issue expressly excludes health care services rendered under the Workers' Compensation Act. 770 ILCS 23/10 (West 2004) (citing 820 ILCS 305/1 (West 2004)). The *Zilinger* court further distinguished *Fremarek* and *Augsburg* as cases which focused on the proper method for

asserting personal jurisdiction, not whether personal jurisdiction was necessary. *Zilinger*, 957 F. Supp. at 150. Neither case has any bearing here. St. Alexius misconstrues *Lain v. John Hancock Mutual Life Insurance Co.*, 79 Ill. App. 3d 264, 398 N.E.2d 278 (1979), as an indication that a court must obtain *in personam* jurisdiction to adjudicate rights to "an insurance settlement." There was no insurance settlement in *Lain*; there was no *res* before that court. Rather, the case indicates *in personam* jurisdiction was required to effectively adjudicate a contract. In *Lain*, just a few months before dying abroad, the American owner of a $50,000 life insurance policy executed a document changing his sole beneficiary from his American wife to his Spanish creditor. *Lain*, 79 Ill. App. 3d at 265, 398 N.E.2d at 280-81. The creditor forwarded this document to the insurer and requested confirmation of the change in beneficiary and of the amount of insurance provided by the policy. *Lain*, 79 Ill. App. 3d at 265, 398 N.E.2d at 281. The life insurer was dubious of the transaction and uncertain as to whether it was contractually obligated to pay the policy proceeds to the widow or the creditor. *Lain*, 79 Ill. App. 3d at 266, 398 N.E.2d at 281. Plainly, a contract claim of a purported beneficiary of the contract is not a *res*. *Lain*, 79 Ill. App. 3d at 273, 398 N.E.2d at 286. The court determined the deceased man's creditor was a necessary and indispensable party to an action to determine competing and adverse claims to the proceeds of the life insurance policy and was entitled to personal service of process. *Lain*, 79 Ill. App. 3d at 268-73, 398 N.E.2d at 283-86. *Lain* does not give us reason to disturb the ruling now at issue.

¶ 25     St. Alexius also argues it is a separate entity from Alexian Brothers and that the certified mailing to "Alexian Brothers" and the court order concerning "Alexian Brothers" are not binding on St. Alexius. In our opinion, however, any confusion between the two entities was caused by the hospital when it invoiced and corresponded with the Jaykos about Allen's care on sheets of letterhead which did not clearly distinguish "Alexian Brothers" from "St. Alexius Medical Center." The most conspicuous entity on the letterhead was the blended name "Alexian Brothers St. Alexius Medical Center." This name appeared prominently at the top of the invoice and the "Past Due" letter and was printed in the darkest, largest font on each page. According to the letterhead, this entity maintained the website "www.stalexius.org" and had telephone service and a mailing address in suburban Hoffman Estates. Hoffman Estates was where Allen received medical treatment. The other entity appearing on the hospital's communications was the "Payment Address" in Chicago for "St. Alexius Medical Center." This name appeared in a small font at the bottom of the invoice and in regular-sized font in two places on the "Past Due" letter. The prominent placement and relative size of the name "Alexian Brothers St. Alexius Medical Center" suggests this was the full or proper name of the organization and that a shortened form of the name was used for the payment center. We find that the hospital's communications would cause any reasonable person to (a) believe the name of the hospital was "Alexian Brothers St. Alexius Medical Center" (b) the two names were interchangeable, and (c) payments were to be sent to the Chicago address but the Hoffman Estates address was for corresponding with the health care provider and transmitting the motion to adjudicate the lien and the notice of the hearing date. There is no dispute that the Jaykos' certified mail was delivered. Accordingly, we find that the Jaykos' certified mail delivery to "Alexian Brothers" in Hoffman Estates

regarding the lien of "St. Alexius Medical Center" was effective.

¶ 26　　We are not swayed by St. Alexius' contention that the certified mail should have been directed to its attorneys' office in Deerfield, Illinois, because the law firm's name and address were printed on the notice of lien. St. Alexius describes a mailing to a party and not the party's attorney as ineffective, but St. Alexius' fails to cite any supporting precedent and relies solely on its incorrect interpretation of Supreme Court Rule 11(a). Ill. S. Ct. R. 11(a) (eff. Nov. 15, 1992). This rule indicates service "shall be made upon the party"; however, "[i]f a party is represented by an attorney of record, [then] service shall be made upon the attorney." Ill. S. Ct. R. 11(a) (eff. Nov. 15, 1992). The clear language of the rule and cases which apply it, such as *Firku*s, *Westphall*, and *Tobias*, indicate that one becomes an attorney "of record" in a case by filing an appearance or other pleading with the court. *Firkus v. Firkus*, 200 Ill. App. 3d 982, 990, 558 N.E.2d 554, 558 (1990) ("Goldenhersh became an attorney of record at the time he filed the post-trial motion on behalf of the wife"); *Westphall v. Trailers, Campers, Campgrounds, Inc.*, 76 Ill. App. 3d 205, 208, 392 N.E.2d 741, 744 (1979) (because counsel had not entered an appearance, he "was not an attorney of record in this case, nor did he ever become one, and plaintiff was not required *** to serve notice of the October 24 hearing upon him"); *Tobias v. King*, 84 Ill. App. 3d 998, 1001, 406 N.E.2d 101, 103 (1980) (same). The procedural rule does not suggest that mailing a notice of lien to a former patient is the equivalent of filing an appearance or other pleading with the court. We therefore find that when the Jaykos' certified mail was delivered in Hoffman Estates, St. Alexius may have had legal representation but it did not have "an attorney of record" in the case and that the Jaykos were not required by Supreme Court Rule 11(a) to serve notice on St. Alexius' lawyers. Ill. S. Ct. R. 11(a) (eff. Nov. 15, 1992).

¶ 27　　This conclusion does not resolve whether the two subsequent court orders adjudicating the health care lien of "Alexian Brothers" rather than "St. Alexius Medical Center" are binding on appellant St. Alexius. As we set out above, (a) Judge Maddux granted the Jaykos' motion to adjudicate the four liens against the action to $0 and (b) Judge Lynch later granted the Jaykos' petition to approve the $30,000 settlement and he again ordered that the liens be reduced to $0. The motion presented to Judge Maddux referred to the lienholder as "St. Alexius Medical Center" and the petition presented to Judge Lynch referred to the lien claimed by "Alexian Brothers." Both resulting court orders referred to only "Alexian Brothers" instead of St. Alexius. St. Alexius' motion to adjudicate its lien anew pointed out this discrepancy in names, but Judge Maras nonetheless denied the motion. We do not know her specific reasoning because, again, the appellant did not give us a transcript or bystander's report of the hearing, but the record suggests the variance in the lienholder's name was a clerical error by the attorney who hand drafted the orders (and was caused by the hospital's confusing letterhead) and that the judge did not intend to determine the rights of "Alexian Brothers" instead of St. Alexius.

¶ 28　　Clerical errors in an order, including the correct name of a party, may be modified at any time by entry of a *nunc pro tunc* or "now for then" order. *Johnson v. First National Bank of Park Ridge U/T # 250*, 123 Ill. App. 3d 823, 463 N.E.2d 859 (1984). In *Johnson*, for instance, a man was awarded $5,000 for personal injuries he suffered on real estate owned by a bank trust. *Johnson*, 123 Ill. App. 3d at 824, 463 N.E.2d at 860-61. However, the court's

half-sheet indicating judgment was entered in his favor and against the property owner identified the defendant as "First National Bank of Park Ridge" instead of the party that had been sued, "First National Bank of Park Ridge U/T 205." *Johnson*, 123 Ill. App. 3d at 824, 463 N.E.2d at 860. ("A half-sheet is a document kept in the court file, upon which is entered a 'memorandum of papers filed, proceedings, orders and judgments.' " *Berzana v. Mezyk*, 86 Ill. App. 3d 824, 824-25, 408 N.E.2d 412, 412 (1980) (quoting Cook Co. Cir. Ct. R. 0.3(b) (Oct. 2, 1995)).) Thus, the judgment debtor appeared to be the bank individually rather than the bank in its capacity as trustee of Trust Number 205. The man failed to collect on the judgment for many years, but he eventually attempted to attach the assets of the bank as opposed to the assets of Trust Number 205, at which point the bank moved to correct the erroneous name on the half-sheet. *Johnson*, 123 Ill. App. 3d at 826, 463 N.E.2d at 861.

¶ 29    The usual rule is that a court loses jurisdiction to review its own final order or judgment after the expiration of 30 days. *Johnson*, 123 Ill. App. 3d at 826, 463 N.E.2d at 862. Once a court order becomes final and appealable with the passage of 30 days, the court may not correct any question of fact or law (*Johnson*, 123 Ill. App. 3d at 826-27, 463 N.E.2d at 862), supply any omitted judicial action, or correct any judicial error (*Ad-Ex, Inc. v. City of Chicago*, 247 Ill. App. 3d 97, 101, 617 N.E.2d 333, 336 (1993)). In other words, the court may not rule on matters of substance (*Anderson v. Alberto-Culver USA, Inc.*, 337 Ill. App. 3d 643, 662, 789 N.E.2d 304, 318 (2003)) or correct an alleged error involving the merits of a case (*Moore v. Shook*, 276 Ill. 47, 52, 114 N.E. 592, 584 (1916)). Changes of this nature would effectively make the suit " 'a new case.' " *Southland Corp. v. Village of Hoffman Estates*, 130 Ill. App. 2d 311, 315-16, 264 N.E.2d 451, 454 (1970) (quoting Sidney Z. Karasik, *Jurisdiction of Trial Court After Notice of Appeal*, 53 Ill. B.J. 30 (1964)). If, however, there is proper evidence of a clerical error, then the court may at any time use a *nunc pro tunc* order to correct the mistake. *Johnson*, 123 Ill. App. 3d at 827, 463 N.E.2d at 862. A *nunc pro tunc* order reflects the reality of what occurred. *Ad-Ex*, 247 Ill. App. 3d at 101, 617 N.E.2d at 335. The distinction between a judicial error and a clerical error "does not depend so much upon the source of the error as upon whether it was the deliberate result of judicial reasoning and determination [citation], as opposed to inadvertence in the ministerial matter of putting in form the judgment of the court [citation]." *Kooyenga v. Hertz Equipment Rentals, Inc.*, 79 Ill. App. 3d 1051, 1058, 399 N.E.2d 216, 222 (1979). The correction must be based on a note, memorandum, or paper remaining in the file or records of the court, rather than a personal recollection of the trial judge or some other person. *Johnson*, 123 Ill. App. 3d at 827, 463 N.E.2d at 862; *Fox v. Department of Revenue*, 34 Ill. 2d 358, 360, 215 N.E.2d 271, 272 (1966) (a *nunc pro tunc* entry cannot rest on a recollection, or on a new affidavit or testimony).

¶ 30    In *Johnson*, the bank argued the entry of judgment against the bank individually was "totally unsupported by any of the official records in the file and was an obvious clerical error in recording the judgment." *Johnson*, 123 Ill. App. 3d at 826, 463 N.E.2d at 861. A clerical error was properly corrected by *nunc pro tunc* order. The circuit court agreed after reviewing the court file in which the complaint, summons, alias summons, appearance, and answer all referred to the bank in its capacity as trustee; the only documents which referred to the bank individually were a memorandum of judgment which was neither signed nor

stamped and the half-sheet which had been recreated by court personnel four years after the judgment date because the original case file had been lost. *Johnson*, 123 Ill. App. 3d at 827-28, 463 N.E.2d at 862-63. The injured man took an appeal because Trust Number 205 had been closed when all the assets were taken in a condemnation proceeding and there was no trust property from which to collect his $5,000 judgment. *Johnson*, 123 Ill. App. 3d at 825, 463 N.E.2d at 862. The appellate court, however, affirmed the decision to amend the half-sheet *nunc pro tunc* based on the contents of the court file. *Johnson*, 123 Ill. App. 3d at 828, 463 N.E.2d at 863.

¶ 31    Similarly, in *Dauderman*, the plaintiff motioned to correct a divorce judgment which ordered one of the parties to pay "$400 as alimony" instead of $400 "per month" as the court had intended when it entered the initial order. *Dauderman v. Dauderman*, 130 Ill. App. 2d 807, 263 N.E.2d 708 (1970). In affirming the order on appeal, the appellate court noted that the wording of the original divorce judgment "demonstrates that the words 'per month' were inadvertently omitted." *Dauderman*, 130 Ill. App. 2d at 809, 263 N.E.2d at 710.

¶ 32    Also pertinent here is *Anderson*, in which a fatal plane crash at Palwaukee Municipal Airport in 1996 resulted in claims against numerous defendants, including Aon Aviation, Inc., and Aon Corporation. *Anderson*, 337 Ill. App. 3d at 646, 789 N.E.2d at 306. The court dismissed "Aon Corp." as a party before the case went to a jury trial. *Anderson*, 337 Ill. App. 3d at 660, 789 N.E.2d at 317. Transcripts indicated that during the jury instruction conference, counsel for the remaining parties agreed upon certain instructions regarding "Aon" without differentiating between the two Aon entities, counsel for the Aon defendants tendered instructions which listed the Aon defendants simply as Aon, and the trial judge remarked that the parties had been using the two names interchangeably throughout the trial and that the Aon defendants' name had been shortened to Aon for the jury. *Anderson*, 337 Ill. App. 3d at 658-59, 789 N.E.2d at 315. The jury returned a $19 million verdict against "Aon," but the judge entered a judgment order stating the verdict had been returned against "Aon Corp." *Anderson*, 337 Ill. App. 3d at 659, 789 N.E.2d at 315-16. After the judgment became final and was on appeal, the judge entered *nunc pro tunc* orders to substitute Aon Aviation as judgment debtor and again dismiss Aon Corp. with prejudice and without costs. *Anderson*, 337 Ill. App. 3d at 660, 789 N.E.2d at 316. The appellate court concluded the correction was proper, stating:

    "Here, the *** *nunc pro tunc* order was not a change of substance that would present a 'new case' to this court from the matter that was appealed. The Whitener Estate filed its complaint against both Aon corporate entities. Although the circuit court and parties to the case frequently referred to Aon defendants as 'Aon' throughout the trial and did not distinguish Aon Aviation from Aon Corp., the court already had dismissed Aon Corp. as a party prior to opening argument. The record shows the basis upon which the amendment was made. [Citation.] Therefore, upon modifying the [judgment] order, the court was not deciding a substantive issue because Aon Corp. was no longer a party. Liability was rendered upon Aon Aviation as the only remaining Aon corporate entity. The court here merely corrected a clerical error to reflect the proper name of the judgment debtor. [Citation.]" *Anderson*, 337 Ill. App. 3d at 662, 789 N.E.2d at 318.

¶ 33    Given the facts disclosed by the record in this case, we find it necessary to remand so that

the circuit court may determine whether a *nunc pro tunc* order referring to the appellant St. Alexius rather than Alexian Brothers is appropriate. However, if the circuit court determines that a *nunc pro tunc* order is unwarranted, the circuit court is directed to adjudicate the lien claim of St. Alexius anew.

¶ 34      In summary, we have found that section 30 of the Act, like section 10 of the Act, provides for written notice to be served by registered or certified mail or in person (770 ILCS 23/10, 30 (West 2006)), that the Jaykos' motion to adjudicate the liens was an *in rem* proceeding for which notice by certified mail was sufficient, and that directing the hospital's certified mail to Hoffman Estates was effective. We affirm the circuit court's various rulings to that effect. However, we remand with directions for the court to consider the limited issue of whether a *nunc pro tunc* order should be entered to reflect the reality of what occurred when the Jaykos presented their motion to adjudicate the health care provider liens to $0 and their motion to approve the proposed $30,000 settlement and its distribution.

¶ 35      Affirmed in part; remanded in part with directions.