2020 IL App (2d) 190326-U
No. 2-19-0326
Order filed January 31, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF SUZANNE A. ANDERS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
|     Petitioner/Counter-Respondent-Appellee, | ) ) | |
| and | ) ) | No. 11-D-2416 |
| BRIAN S. ANDERS, | ) ) ) | Honorable |
|     Respondent/Counter-Petitioner-Appellant. | ) ) | Vorderstrasse, Donna-Jo R., Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court acted within its discretion in awarding 6.5% interest on the ex-wife's $5.3 million dissolution property award upon affirmance of the first appeal. When granting the ex-husband's motion to stay the judgment pending this court's ruling on the first appeal, the trial court noted that it would award some amount of interest in exchange for granting the stay and, in fact, the ex-husband had *offered* to post a bond exceeding the property award amount to cover both that amount and the anticipated interest.

¶ 2 In the underlying dissolution action, the trial court awarded respondent/counter-petitioner-appellant, Brian S. Anders, approximately $10.6 million, and it awarded petitioner/counter-

respondent-appellee, Suzanne A. Anders, approximately $5.3 million. Brian moved to stay payment of Suzanne's property award pending appeal. In arguing for the stay, Brian offered to post a bond of $5.5 million, "which would cover the cost and amount of the judgment, including any anticipated interest." The trial court granted the stay, agreeing with Brian that discretionary, as opposed to mandatory, interest was appropriate. It set the bond amount at $5.65 million, which included anticipated interest of approximately $345,000, and it noted its expectation that "this could go on longer [than one year]." More than two years later, after this court affirmed the property award and the supreme court denied Brian's petition for leave to appeal, the mandate issued. Within days of the mandate, Suzanne moved for, and the trial court ordered, the disbursement of the $5.3 million award. The court also ordered the parties to brief the issue of interest, and, after entertaining argument, awarded Suzanne approximately $775,000 in interest, representing 6.5% discretionary interest over the 27-month duration of the appeal. Brian appeals, raising issues of law of the case, *res judicata*, and the court's general authority to award interest. For the reasons that follow, we reject Brian's arguments, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     A more detailed history of the parties' legal disputes may be found in *In re Marriage of Anders*, 2018 IL App (2d) 170216-U (modified upon denial of rehearing, Aug. 1, 2018). For the purposes of the instant appeal, it is enough to know the following.

¶ 5     On August 30, 2016, the trial court entered the dissolution judgment. It awarded Brian $10.6 million and Suzanne $5.3 million, in addition to real and personal property awards. Brian was to pay Suzanne $5.3 million from an account he controlled within 60 days.

¶ 6      On September 8, 2016, Brian filed a notice of appeal and moved to stay the judgment pursuant to Illinois Supreme Court Rule 305 (eff. July 1, 2017), offering to post the full $5.3 million award as bond.  Brian's motion to stay pertained only to the $5.3 million award.

¶ 7      On September 22, 2016, the court heard argument on the motion to stay.  Brian opened by offering a bond amount *in excess* of the $5.3 million award: "We have filed a motion to stay and are willing to post a bond of [$5.5 million] which would cover the cost and amount of the judgment, *including any anticipated interest*."  (Emphasis added.)  The proposed bond amount of $5.5 million included $200,000 in interest at a rate of just under 4% per annum, assuming the appeal lasted one year.  Suzanne responded that the bond amount should reflect a higher interest rate, noting that section 2-1303 of the Code of Civil Procedure instructed an interest rate of 9% per annum from the date of the judgment until satisfied.  735 ILCS 5/2-1303 (West 2018).  Brian replied that Rule 305 did not require the full 9% interest, and a property award in divorce proceedings is not a section 2-1303 money judgment.  Rather, he urged, in fashioning the bond amount, the court should include an interest rate that is likely sufficient to compensate the appellee for being denied access to the funds for the duration of the appeal: "[T]he anticipated interest is the value of the money that is lost by use of the judgment holder."  Brian stated that the Treasury bond rate, then at 2%, was a sound reference point, but acknowledged that he had earlier suggested 4%.

¶ 8      The trial court essentially agreed with Brian.  The $5.3 million at issue was a property award, not a money judgment.  Therefore, the 9% interest rate was not "appropriate."   In setting the bond amount, the anticipated interest on the award should equal "the loss of those monies to invest over a period of time that you estimate for the appeal to be done."  The court ordered a bond amount of $5.65 million, $150,000 more than Brian had suggested, and it warned that the appeal could take more than one year.

¶ 9     At the end of the hearing, Suzanne noted that she still wished to file a motion to reconsider *other* aspects of the judgment. Less than 30 days had passed since the judgment. The trial court clarified that Suzanne could move to reconsider, but that would render Brian's notice of appeal premature. Nevertheless, the stay and bond order would remain in place as to the $5.3 million award, should Brian pursue the appeal. Brian could submit the appropriate letter of credit at that time.

¶ 10     On September 28, 2016, Suzanne moved to reconsider other aspects of the judgment not relevant here. On March 2, 2017, the court granted Suzanne's motion, modifying certain aspects of the judgment, but not the $5.3 million award. On March 17, 2017, Brian filed a notice of appeal. He did not submit the letter of credit necessary to secure the bond to stay payment of the award pending appeal, nor did he pay the $5.3 million award.

¶ 11     Between March 3, 2017, and August 7, 2017, Suzanne sought, and Brian fought against, the reduction of the $5.3 million award to a money judgment. On August 2, 2017, the trial court ordered that, should Brian fail to submit a proposed letter of credit to secure his bond within two days, it would entertain Suzanne's motion to reduce the $5.3 million award to a money judgment. Brian complied with the order, resolving the dispute for the time being. The letter of credit and the appeal bond it secured was for $5.65 million.

¶ 12     On July 5, 2018, this court affirmed the judgment, including the $5.3 million award. (On August 1, 2018, we entered a modified order upon denial of rehearing, but this did not affect the $5.3 million award.) On January 4, 2019, the appellate mandate issued to the circuit court clerk.

¶ 13     On January 15, 2019, Suzanne moved the trial court to order the circuit clerk to disburse her award. On January 28, 2019, the court ordered that the clerk draw on the letter of credit, that the entire $5.65 million be deposited with the clerk, that the clerk disburse $5.3 million to Suzanne,

and that the clerk reserve the remaining $345,000, pending a determination of the proper interest amount.

¶ 14    On February 4, 2019, Suzanne moved to set interest on the $5.3 million property award, given that she had been denied access to the funds for 27 months. She again argued for a 9% interest rate, which, over 27 months, would amount to approximately $1.075 million in interest. She first argued that the court should award mandatory interest pursuant to section 2-1303 (735 ILCS 5/2-1303). Suzanne argued in the alternative that, should the court award discretionary interest, a 9% rate was, nevertheless, appropriate and equitable. Over the prior 27 months, Brian had access to the marital estate's entire $16 million in funds. He lived a lavish lifestyle during this time, vacationing around the world via private plane and yacht. (Not only did Brian have extensive funds, but so did his other family members; his father bought him a house.) In contrast, Suzanne did not have access to her $5.3 million property award, lost investment opportunities, and had to take out a lien on her home to pay her legal fees during the appeal. Suzanne noted that, if the court did not increase the $345,000 amount that it had already set aside to account for anticipated interest, then, the interest rate would amount to only 2.8%.

¶ 15    On February 25, 2019, Brian responded. He argued that interest, *if appropriate*, was at best discretionary, not mandatory. Further, Brian argued that, here, interest was not appropriate. Brian argued that the law-of-the-case and *res judicata* doctrines precluded an interest award, because neither the trial court's August 30, 2016, judgment, the trial court's March 2, 2017, modified judgment, nor this court's 2018 appellate disposition addressed the question of discretionary interest. "Because Suzanne had an opportunity to appeal that issue of [the trial] court's not having awarded her discretionary interest, but did not do so, and therefore that issue is closed and now law of the case, waived, and cannot now be revisited by [the trial court] on

remand." Brian contended that to award interest at this point would be a violation of his due-process rights, because he was never afforded the opportunity to be heard on the issue.

¶ 16    On April 10, 2019, the trial court conducted a hearing. It ruled as follows. First, citing *Finley v. Finley*, 81 Ill. 2d 317, 332 (1980), the court determined that interest on the marital property award was discretionary. In this case, it had already determined at the September 22, 2016, hearing that some amount of interest would be appropriate in exchange for staying payment of the award. It did not believe the interest rate should be as high as 9%, the section 2-1303 statutory rate, because that rate applied to delinquent judgments and was punitive in nature. Here, Brian had a right to appeal and was permitted to stay the distribution of the award, which was not, as of yet, delinquent. However, the court believed that a rate greater than the rate of Treasury bonds was warranted. Suzanne lost an opportunity to invest during a 27-month period when the Standard and Poor's Index (S & P) performed at 13%. Not only did Suzanne lose the opportunity to invest, but she could not draw from her property award to pay for legal fees, and she had to take out a loan at a rate of 5.5% to pay her legal fees. Thus, the court determined that 6.5% was an equitable interest rate under the circumstances. This resulted in a total interest award of $774,839.52. Of that, $345,000 was held by the clerk and could be distributed immediately. The remaining $430,000 was to be paid within 30 days. Should Brian fail to pay the remaining $430,000 within 30 days, then he would owe interest on the delinquent amount at a rate of 9%. This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Brian devotes six pages of his brief to *Finley* and its progeny to show that interest on marital property awards is discretionary, not mandatory. The trial court agreed with Brian on this point, and Suzanne does not raise the issue on appeal. Therefore, we do not discuss

the issue. Next, Brian argues: (1) the law-of-the-case and *res judicata* doctrines preclude an award of discretionary interest, because neither the March 2, 2017, appealed-from judgment nor this court's 2018 appellate ruling mentioned discretionary interest; (2) Rule 305 does not allow for the *post hoc* awarding of interest; (3) the trial court lost jurisdiction of the case when Brian appealed the March 2, 2017, order modifying judgment; (4) the *post hoc* awarding of interest violates Brian's due process rights; and (5) the trial court improperly awarded "interest upon interest" when it ordered that an interest rate of 9% would apply to late payment of the remaining $430,000 owed. Brian's arguments raise questions of law, which we review *de novo*. See, *e.g.*, *Jayko v. Fraczek*, 2012 IL App (1st) 103665, ¶ 3; see also *Chamberlain v. Civil Service Com'n of Village of Gurnee*, 2014 IL App (2d) 12125, ¶ 25 (procedural due process claims are reviewed *de novo*).

¶ 19    Before we address Brian's arguments, we first note what he does *not* argue and what he does *not* address. Brian does not challenge the reasonableness of the 6.5% interest rate, provided interest is appropriate. Indeed, given the trial court's reasons for issuing the 6.5% rate—an S & P performance of 13% and Suzanne's need to take out loans—Brian would be hard pressed to do so.

¶ 20    Also, Brian does not discuss the September 22, 2016, proceedings, wherein the trial court ordered that some amount of interest on the property award would be awarded, should a stay be granted. Instead, Brian casually mentions the $5.65 bond amount without acknowledging that a portion of that amount included interest on the property award, *offered by Brian himself* as a means to secure the stay. "We have filed a motion to stay and are willing to post a bond of [$5.5 million] which would cover the cost and amount of the judgment, *including any anticipated interest*." (Emphasis added.)

¶ 21    We find this omission troubling. Because Brian *offered* to pay interest on the property award to secure the stay, which was ultimately granted, it would be within our discretion to reject

Brian's arguments outright on the principles of judicial estoppel and waiver. A litigant may be judicially estopped from seeking a position contrary to that taken in an earlier proceeding from which he or she benefitted. *Barack, Ferrazzano, Kirshbaum, Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003). Judicial estoppel protects the integrity of the judicial process by prohibiting parties from changing positions to suit the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). In a similar vein, implied waiver arises "when the conduct of the [litigant] against whom waiver is asserted is inconsistent with any intention other than to waive [the issue]." *Home Insurance Co. v. Westerfield Insurance Co.*, 301 Ill. App. 3d 49, 53 (1998). Here, as discussed, Brian offered to pay some amount of interest in exchange for the stay of the near-immediate payment of the $5.3 million property award. This was a benefit to him. He was able to retain and invest the $5.3 million for more than 2 years, and this conduct can only be consistent with an intent to waive a challenge to the concept of interest in general.

¶ 22    Even if we were to agree with Brian that, perhaps, he only offered to pay a smaller, discretionary interest amount in an effort to rebut Suzanne's claim for mandatory interest at a rate of 9%, we reject Brian's remaining arguments. Those arguments, and our reasons for rejecting them, are as follows.

¶ 23    First, Brian argues that the law-of-the-case and *res judicata* doctrines preclude an award of discretionary interest. Under the law-of-the-case doctrine, " 'a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge the decision at a later time.' " *Aardvark Art v. Lehigh/Steck-Warlick, Inc.*, 284 Ill. App. 3d 627, 632 (1996) (quoting *Williamsburg Wax Museum, Inc. v. Historic Figurines, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)). The doctrine limits re-litigation of previously

decided issues and encompasses not just explicit decisions but also those decided by necessary implication. *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 15.

¶ 24 Here, the law-of-the-case doctrine does not preclude an interest award. On September 22, 2016, the court informed Brian that it would stay payment of the $5.3 million property award, but discretionary interest would accrue on that amount during the pendency of the appeal. Brian paid the bond, which included said anticipated discretionary interest. Had Brian refused to do so, the court would have enforced its order to pay the $5.3 million property award within 60 days. That discretionary interest would be awarded following the stay and upon affirmance *is* the law of the case.

¶ 25 Under the *res judicata* doctrine, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties (or their privies) on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). *Res judicata* has three elements: (1) the parties are the same in the first lawsuit as in the second; (2) the cause of action is the same; and (3) there was a final judgment on the merits in the first cause of action. *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 516 (2005). The *res judicata* doctrine does not apply here, because, as stated by Suzanne, the April 10, 2019, order "was not only consistent with that of September 22, 2016, it was entered in the same lawsuit."

¶ 26 Second, Brian argues that Rule 305 does not allow for the *post hoc* awarding of interest. This argument, like the others, misstates what occurred below. The court did *not* modify the property award *post hoc* to tack on interest. Rather, Suzanne was awarded $5.3 million, to be paid within 60 days of the judgment. Rather than pay $5.3 million within 60 days, Brian sought a stay pending appeal and agreed to pay interest on the award. Rule 305, under which Brian chose to avail himself, is the proper vehicle by which to seek a stay of the payment under the condition of

discretionary interest. "The enforcement of a judgment for money only, or any portion of a judgment which is for money, shall be stayed if a timely notice of appeal is filed and an appeal bond *** is approved by *** the court. *** The bond *** ordinarily shall be in an amount sufficient to cover the amount of the judgment and costs *plus interest reasonably anticipated to accrue during the pendency of the appeal*." (Emphasis added.) Ill. S. Ct. R. 305 (eff. July 1, 2017).

¶ 27    Third, Brian argues that the trial court lost jurisdiction of the case when Brian appealed the March 2, 2017, order modifying judgment, and, therefore, it was without jurisdiction on April 10, 2019, to enter the $775,000 interest award. It is true that the trial court loses jurisdiction to modify the judgment 30 days after the disposition of the last timely filed posttrial motion. *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 49 (1999). However, when the appellate mandate issues and is filed with the circuit clerk, the trial court has jurisdiction to enforce the judgment and conduct proceedings as though no appeal had been taken. Ill. S. Ct. Rule 369(b) (eff. July 1, 1982). Here, the trial court did nothing improper. It ordered interest on the property award in exchange for staying the payment pending appeal. It did not further modify the judgment. When jurisdiction returned to the trial court, it was able to tailor the already-ordered interest to the circumstances that had just then become clear—the length of the appeal and the lost investment opportunity.

¶ 28    Fourth, Brian argues that his due-process rights were violated, because he was not afforded "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re D.W.*, 214 Ill. 2d 289, 316 (2005). Brian contends that he never had the opportunity to avoid a costly interest award by paying Suzanne the $5.3 million property award before appealing. We disagree, and we find this argument extremely disingenuous. Brian has been heard on the issue. He was afforded the opportunity to brief and argue the issue of interest prior to and at the September 22, 2016,

hearing. He was again afforded the opportunity to brief and argue the issue of interest after the mandate issued, prior to and at the April 10, 2019, hearing. Since at least September 22, 2016, Brian knew that interest would accrue on the $5.3 million award. The trial court warned that the appeal could last more than one year and it estimated a rate higher than the Treasury bond rate and closer to a rate approximating Suzanne's lost investment opportunity over the relevant period. Brian knew the interest award would be substantial, and he chose to risk incurring it in exchange for staying payment pending appeal.

¶ 29    Fifth and finally, Brian argues that the trial court improperly ordered "interest upon interest" when it ordered that the remaining $430,000 due would accrue interest at a rate of 9% if late. Section 2-1303 provides for simple, not compound interest. *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 863 (1997). We see nothing improper in the trial court's judgment. The court awarded $775,000 in discretionary interest on the $5.3 marital property award. The remaining $430,000 due became a judgment amount, which would accrue simple interest at a rate of 9% if delinquent.

¶ 30    In sum, underpinning all of Brian's arguments is the faulty premise that the trial court improperly modified the property award after Brian filed the notice of appeal. That did not occur. Rather, in 2016, the trial court ordered Brian to pay the $5.3 million property award within 60 days. Brian sought to stay that payment pending appeal, and, in exchange, posted a $5.65 million appeal bond that included $345,000 in anticipated interest. The court warned as early as September 2016 that the amount could be higher, depending on the circumstances and should the appeal last more than one year. That is what occurred. On this issue, the proceedings below were perfectly legitimate.

¶ 31                                III. CONCLUSION

¶ 32    For the reasons stated, we affirm the trial court's judgment.

¶ 33    Affirmed.